**In the Matter of MATTHEWS ASSOCIATES, INC., a Corporation of the State of New Jersey, Bankrupt.**

**A. & J. Friedman Supply Co., Inc., Appellant.**

**No. 16662.**

United States Court of Appeals Third Circuit.

Argued Nov. 22, 1967.

Decided May 9, 1968.

Aaron Z. Schomer, Gurtman & Schomer, Passaic, N. J., for appellant.

E. Robert Levy, Hoffmann, & Humphreys, Wayne, N. J., for appellee, Burell I. Humphreys.

Don Allen Resnikoff, Asst. U. S. Atty., Newark, N. J., for appellee, United States (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief).

Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The bankrupt, Matthews Associates, Inc., was a subcontractor on a construction contract and as such had purchased plumbing and heating materials from the appellant, A & J Friedman Supply Co. In the Matthews bankrupty proceeding, Friedman filed a claim for the price of these materials in the amount of $3,871.-13.[1]

Thereafter, with the approval of the referee, the trustee accepted $1,654.57 in settlement of a claim against the general contractor for money owed Matthews under its subcontract. The appellant then amended its claim to assert, on its own behalf and on behalf of any other materialmen similarly situated, that the sum thus received by the trustee constituted a trust for their benefit by reason of a New Jersey statute which reads:

2A:102-11. Misappropriation of funds paid to subcontractor for building purposes.

All moneys received by a subcontractor from the owner or mortgagee of real estate, or any leasehold or other interest therein, or from a contractor, for the purpose of having a building erected, constructed, completed, altered, repaired or added to, are trust funds in the hands of the subcontractor to be applied to the amount of all claims due or to become due and owing from the subcontractor to all persons furnishing labor or materials to him for the erection, construction or completion of the building or any alteration, repair or addition thereto, and any other reasonable and necessary charge in connection therewith. Any subcontractor, or any officer, director or agent of the subcontractor, who pays or consents to the appropriation of such funds for any other purpose prior to the payment of all claims and charges for the payment of which the funds constitute a trust fund, is guilty of a misdemeanor. As amended L. 1954, c. 123, p. 599, § 2.

The referee disallowed this claim of a dominant interest in a particular fund and the district court sustained that position. This appeal followed.

The appellant contends that the quoted language of the New Jersey statute imposed upon Matthews a legal duty to use any such collection as we have here to pay appellant and any other creditors similarly situated and, therefore, that a bankruptcy court, guided by principles of equity, should hold that the money paid to Matthews' trustee in bankruptcy is a trust fund for such creditors.

---

1. Friedman had not undertaken to perfect a materialman's statutory lien on the property where the materials were used.

We assume, but do not decide, that this contention would have merit if Matthews had received this money before bankruptcy.[2] But that is not the case here. The debt owed Matthews by the general contractor was collected by the trustee after bankruptcy.

The New Jersey statute covers "moneys received by a subcontractor". It undertakes to prevent a subcontractor's possible diversion of certain actual receipts to uses other than payment of materialmen. It does not purport to cover outstanding and uncollected obligations owed to a subcontractor. Thus, any equitable interest a materialman might arguably derive from the requirement of the statute would come into existence, if at all, only after the chose in action had been reduced to possession by the subcontractor.

Here, the subcontractor himself never collected the debt. Bankruptcy intervened before the event, the receipt of money, upon which the arising of any statutory duty depended. Thus, the appellant must contend that, although it was only a general creditor when its debtor became bankrupt, action thereafter by the trustee created a trust or an equitable lien for its benefit.

Such a change of a creditor's status and priority solely upon the basis of events after bankruptcy would be contrary to the basic theory and scheme of the Bankruptcy Act. In addition to the title to the bankrupt's assets conferred by Section 70, sub. a, 11 U.S.C. § 110(a), of the Bankruptcy Act, the trustee, by Section 70, sub. c, 11 U.S.C. § 110(c), is given the position of one who has acquired a lien as of the time of bankruptcy. Thus, Matthews' trustee acquired a lien upon whatever contractual claim Matthews had against the general contractor. And the trustee acquired this preferred position at a time when such a materialman as Friedman had nothing but a general creditor's claim against Matthews. Moreover, Section 70 gives the trustee his special status in order that he may achieve equality of distribution among all of those who, like Friedman, are general creditors at the time of bankruptcy.[3] It was in exercise of his power to that equalitarian end that the trustee here collected the debt owed Matthews by the general contractor. It would be a self-contradictory travesty of the legal scheme of bankruptcy for such reduction of an unencumbered asset to possession for the benefit of all creditors to have the effect of converting the money thus received into a trust fund for a limited group of creditors.[4]

2. The most authoritative New Jersey case interpreting this statute is Samuel D. Wasserman, Inc. v. Klahre, 1952, 24 N.J. Super. 143, 147–148, 93 A.2d 628, 631, where the appellate division stated: "It is entirely clear to us that the scope of the statutory provision on which the plaintiffs build their case, is limited to the creation of a criminal offense; and that no civil action can be based directly on the statute." But the court added: "We are satisfied that had * * * [the contractor] violated the statute, the plaintiffs would have had whatever civil remedy might be appropriate to the circumstances under the general principles of law or equity." Id. at 148, 93 A.2d at 631. See also Plevy v. Schaedel, 1957, 44 N.J.Super. 450, 130 A.2d 910, and the unreported case of Minnesota Mining & Mfg. Co. v. John E. Joyce, Inc., No. C–2709–61, Super.Ct., Ch.Div. Monmouth County, January 25, 1963, where the trial courts held flatly that this criminal statute gives rise to no civil remedy.

3. See Sampsell v. Imperial Paper & Color Corp., 1941, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; 3 Collier, Bankruptcy, 14th ed., ¶ 60.01.

4. In this regard we disagree with Wickes Boiler Co. v. Godfrey-Keeler Co., 2d Cir., 1940, 116 F.2d 842, modified on rehearing 1941, 121 F.2d 415. Carrier Corp. v. J. E. Schecter Corp., 2d Cir., 1965, 347 F.2d 153, cert. denied 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157, is distinguishable in that there the funds came into the debtor's hands before any bankruptcy adjudication while he was operating pursuant to authorization by the Bankruptcy Court in an effort to achieve an arrangement under Chapter XI.

A strong argument can be made that even if Friedman acquired an interest in the fund when it came into the hands of

**104**

Such travesty could be avoided only by contending that before bankruptcy the subcontractor's materialmen had some legally recognized interest in any contractual obligation of the general contractor to the subcontractor. But no such interest existed at common law and no statute has been enacted that purports to have that effect. As already has been stated, the materialmen were only general creditors of the subcontractor at the time of bankruptcy.

For these reasons, we conclude that the decisions of the court below and the referee were correct.

The judgment will be affirmed.

the trustee in bankruptcy, this interest was inferior to the prior legal and equitable lien of the trustee conferred by Section 70 sub. c. The *Wasserman* case, supra note 2, held that any interest under N.J.S. 2A:102–11, N.J.S.A. is at most an "undisclosed equitable lien". It is difficult to see how such a lien could be superior to the prior lien interest of the trustee as a representative of all general creditors.