In the Matter of CENTRAL PIPING INCORPORATED, Bankrupt.

JOHN D. LAWRENCE, INC., Plaintiff,

v.

The BANK OF NEW JERSEY and John S. Holston, Jr., Trustee of the Estate of Central Piping Incorporated, Defendants.

John S. HOLSTON, Jr., Trustee, Plaintiff,

v.

B. F. GOODRICH CHEMICAL COMPANY; Jaybar Contracting, Inc.; the Bank of New Jersey; J. D. Lawrence, Inc.; Heritage Painting, Inc.; Markin, Inc.; Leonard Jed Company; Briggs Rubber Products Company; Cornell & Company, Inc., Defendants.

Bankruptcy No. B-79-00406.

United States Bankruptcy Court, D. New Jersey.

May 20, 1980.

John S. Holston, Jr., Woodbury, N. J., Trustee.

Fluharty, Freeman, Gerstein & Mintz by E. Stevenson Fluharty, Haddonfield, N. J., for trustee.

Charles J. Clarke, Jr. by Clyde J. Donohugh, Haddonfield, N. J., for John D. Lawrence, Inc.

Melnik, Morgan, Klein & Glick by Stephen D. Morgan, Haddonfield, N. J., for Bank of New Jersey.

Tuso, Gruccio, Pepper, Buonadonna, Giovinazzi & Butler by Robert A. De Santo, Vineland, N. J., for B. F. Goodrich Chemical Co.

Jubanyik, Varbalow & Tedesco by Frank V. Tedesco, Collingswood, N. J., for Cornell & Co., Inc.

Kmiec & Palumbo by Charles G. Palumbo, Cherry Hill, N. J., for Heritage Painting, Inc.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

Central Piping Incorporated (Central), the above named Bankrupt, was adjudicated bankrupt on March 26, 1979 following an Involuntary Petition filed against it on February 28, 1979. John S. Holston, Jr. was appointed Trustee.

The Trustee, on June 20, 1979, filed a Complaint directed to B. F. Goodrich Chemical Company; Jaybar Contracting, Inc.; The Bank of New Jersey; Cornell & Company, Inc.; J. D. Lawrence, Inc.; Heritage Painting, Inc.; Markim, Inc.; Leonard Jed Company and Briggs Rubber Products Company seeking the following judgment:

Payment of a sum in the amount of $29,-961.76 representing the balance due Central on a contract between Central and B. F. Goodrich dated March 2, 1977 for general mechanical work for paste stripping systems at the Goodrich plant in Pedricktown, New Jersey.

Releasing Goodrich of any and all liability to any of the above named defendants upon payment of that sum and discharging of

record by the trustee of the contract filed by Central with the Clerk of Salem County upon payment by Goodrich and also cancelling and discharging of record all stop notices filed by any and all defendants, and finally fixing and determining the priorities, if any, among the defendants.

The Defendant named therein, John D. Lawrence, Inc., filed an answer and counterclaim to the Complaint wherein it denied that any sum is due The Bank of New Jersey, and claiming due it the sum of $1,912.75 as a trust fund, asserting thereby reclamation of said trust funds together with interest, costs and counsel fees, and the imposition of a constructive trust on funds held by Goodrich and reclamation of said funds.

In the interim, between the filing of the trustee's complaint and Lawrence's answer and counterclaim, Lawrence filed a complaint directed against the trustee and The Bank of New Jersey wherein it alleges due it the sum of $61,269.40, arising out of agreements with Central, whereby Lawrence provided labor, materials, equipment and supervision for improvements on various sites of property owned, leased or occupied by Texaco, Inc. for property at Route 130, Westville, New Jersey. The original amount was $114,877.50, toward which Central had paid $53,558.10.

Lawrence's claim, stated briefly, against primarily The Bank of New Jersey, and against the Trustee is upon the theory that payment by Texaco to The Bank of New Jersey was of "trust funds" and that theory would apply as to funds due by Goodrich. Lawrence relies upon the provisions of N.J.S.A. 2A:102–10 in support of its demand for payment.

The Bank of New Jersey is a creditor of Central in the sum of $196,998.37, which includes interest to November 9, 1978.

It was proven at the trial that on July 7, 1971 Central, then known as R. Cornell Co., Inc. executed a security agreement in favor of The Bank of New Jersey. The Security Agreement provided, "Borrower grants to Bank, as security for all Borrower's liabilities to Bank, . . . a security interest under the Uniform Code in: (a) All accounts owned by Borrower at the date of this Agreement; (b) All accounts at any time hereafter acquired by Borrower; (c) Such contract rights as borrower may from time to time specifically assign to Bank; and (d) All accessions and proceeds of such accounts receivable and/or contract rights, including the products of the same and returned and repossessed goods." The Security Agreement was perfected by the filing of a Financing Statement on July 8, 1971 in the Office of the Secretary of State. On January 24, 1975 The Bank of New Jersey filed a Financing Statement with the Secretary of State recording the fact that the name of R. Cornell Co., Inc. had been changed to Central Piping as of January 1, 1975. Then on June 15, 1976 The Bank of New Jersey filed a continuation of the Financing Statement which was thus within 5 years of the original filing and continued the validity of the original Financing Statement.

The facts are clear that Goodrich has in its possession the sum of $29,961.76, which it is willing to pay to creditors of Central in accordance with this court's Order determining the rights of parties thereto.

Lawrence is not limiting its claim to funds associated with a particular job it participated in, but is cutting across all contracts of construction and seeks to deny to The Bank of New Jersey a right to any funds paid to it under the Security Agreement by Central, which funds had been received by Central from owners of property for which Central had contracted to do work. Lawrence casts The Bank of New Jersey in the role of a miscreant under the provisions of the New Jersey Statute 2A:102–10.

The Statute reads as follows:

2A:102–10. Misappropriation of funds paid to contractor for building purposes

All moneys received by a contractor from the owner or mortgagee of real estate or any leasehold or other interest therein, for the purpose of having a building erected, constructed, completed, al-

tered, repaired or added to, are trust funds in the hands of the contractor to be applied to the amount of all claims due or to become due and owing from the contractor to all persons furnishing labor or materials to him for the erection, construction or completion of the building or any alteration, repair or addition thereto, and any other reasonable and necessary charge in connection therewith. Any contractor or any officer, director or agent of the contractor, who pays or consents to the appropriation of such funds for any other purpose prior to the payment of all claims and charges for the payment of which the funds constitute a trust fund, is guilty of a misdemeanor. Amended by L.1954, c. 123, p. 599, § 1, eff. July 1, 1954.

This Section is found in the Criminal Statutes of the State of New Jersey, and is directed, as set forth therein, against a contractor who receives money from an owner or mortgagee of real estate or any leasehold or other interest therein, which contractor while the funds are *"in the hands of the hands of the contractor"* are to be applied to the amount of all claims due or to become due and owing from the contractor to all persons furnishing labor or materials to him for the erection, etc., failing which application is guilty of a misdemeanor. (Emphasis added).[1]

The Bank of New Jersey over the years advanced money to Central upon accounts receivable up to 80% of the face amount thereof which advances enabled Central to operate its business and pay bills, presumably including bills to Lawrence. When Central collected upon the accounts receivable it deposited them in a bank account with The Bank of New Jersey, in accordance with its Security Agreement. The Bank of New Jersey could at any time apply the moneys in the special account to the indebtedness due The Bank of New Jersey.[2] As stated before, at the time of the filing of the Petition in Bankruptcy Central was indebted to The Bank of New Jersey in the sum of $196,998.37.

The Bankruptcy Act, Section 70c, casts the Trustee of the Bankrupt Estate into the position of a judgment creditor holding a levy or lien, often described as the ideal judgment creditor. However, his rights are subject to the rights of superior lien creditors. The Trustee has recognized that the perfected Security Agreement of The Bank of New Jersey to the accounts receivable is superior to his right as a judgment creditor. However, the rights of the Trustee are superior to Lawrence's claim to the funds under a "Trust Fund" theory.

■ There is no "Trust Fund" available to Lawrence. But for The Bank of New Jersey's perfected lien on accounts receivable the Trustee would have the right to collect the account receivable from Goodrich and any other account payable debtor to the Bankrupt Estate.

This conclusion of law is clearly mandated by *In re Matthews Associates, Inc.*, 394 F.2d 101 (3 Cir. 1968).

■ The Statute, as stated before, relied upon by Lawrence has only criminal implications. The Statute does not create a trust fund for creditors. As to the sum owed by Goodrich to the Trustee, as stated in *Matthews*, page 103,

It undertakes to prevent a [sub][3] contractor's possible diversion of certain receipts

1. The same provisions apply to moneys received by a subcontractor from the owner or mortgagee for payment to persons furnishing labor or materials to the subcontractor. 2A:102–11.

2. Security Agreement between The Bank of New Jersey and R. Cornell Co. Inc. (Now known as Central Piping Incorporated)

    Par. 11. Bank shall have the right at any time and from time to time, without notice, to:

    (a) apply any part or all of the moneys in the "Special Account" (Cash Collateral Account) representing collected items against any liability of Borrower to Bank, and Bank shall upon request by Borrower make such application against such liability or liabilities as Bank may itself select:

3. [ ] is inserted around sub connoting similarity to the provisions of 2A:102–10 and 2A:102–11.

to uses other than payment to material-men. It does not purport to cover out-standing and uncollected obligations owed to a [sub]contractor. . . .

Here, the [sub]contractor himself never collected the debt. Bankruptcy inter-vened before the event, the receipt of money, upon which the arising of any statutory duty depended. Thus, the ap-pellant must contend that, although it was only a *general* creditor when its debtor became bankrupt, action thereaft-er by the trustee created a trust, or an equitable lien for its benefit.[4] (Emphasis added)

Such a change of a creditor's status and priority solely upon the basis of events after bankruptcy would be contrary to the basic theory and scheme of the Bank-ruptcy Act.

and the court further expounded upon the superior position of the trustee of the bank-rupt estate to a creditor claiming a right to payment from "trust funds", which is claimed herein by Lawrence. Lawrence is cast in the same mold as sought by the creditor in the *Matthews* case, wherein the court said:

It would be a self-contradictory travesty of the legal scheme of bankruptcy for such reduction of an unencumbered asset to possession for the benefit of all credi-tors to have the effect of converting the money thus received into a trust fund for a limited group of creditors. Page 103.

The court in *Matthews*, page 103, does not agree with the decision of the Second Circuit, which interprets the New Jersey Statute 2A:102–10 or 11 as stated in *Wickes Boiler Co. v. Godfrey Keeler Co.*, 116 F.2d 842 (2 Cir. 1940), modified on rehearing 1941, 121 F.2d 415. Matthews also points up that *Carrier Corp. v. J. E. Schecter Corp.*, 2d Cir., 1965, 347 F.2d 153, *cert. de-nied* 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157, is distinguishable from the case at hand. *Matthews*, note 2, page 103, also cites *Wasserman, Inc. v. Klahre*, 1952, 24

N.J.Super. 143, 147–148, 93 A.2d 628, 631 and *Plevy v. Schaedel*, 1957, 44 N.J.Super. 450, 130 A.2d 910, and the unreported case of *Minnesota Mining & Mfg. Co. v. John E. Joyce, Inc.*, No. C–2709–61, Super.Ct., Ch. Div. Monmouth County, January 25, 1963, "where the trial courts held flatly that this criminal statute gives rise to no civil reme-dy."

Just as was stated in *Matthews*, page 104, concerning creditors who supplied materi-als, so must I find, " . . . the material men were only general creditors of the [sub]contractor at the time of bankruptcy."

The case of *Doyle v. Northrop Corp.*, 455 F.Supp. 1318 (D.N.J.1978) relates primarily to the interpretation of a contract or con-tracts, and application of the parol evidence rules, between parties not concerned with the bankruptcy law. The decision does re-cite that N.J.S.A. 2A:102–10 and 11 auto-matically become a part of the agreements, but to be noted is the fact that no contest was made by the alleged secured creditor (defendant), to the rights of labormen and materialmen as superior to the rights of the secured creditor. Furthermore, the secured creditor pointed to the fact that there was no money due such persons other than the testimony of the other party that there was currently due some $10,461.34, and the se-cured creditor further raised the fact that it was not shown that the plaintiffs had or will have any difficulty in paying the amounts due if the security agreement is found valid and the defendant was allowed to foreclose on the collateral. The court thereupon said, " . . . the plaintiffs' claim in this regard is ineffective." It is clear, therefore, that the recital in the opin-ion as to the effect of 2A:102–10 and 11 was at best obiter and not necessary for deter-mination of the matter before the court. On the trial of the specific issue so referred to, the decision of Matthews and cases cited herein are controlling.

I must, therefore, find that Lawrence cannot recover its debt under the provisions

---

4. As to equitable liens see Bankruptcy Act, Section 60a(6), "The recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby de-clared to be contrary to the policy of this sec-tion."

of 2A:102–10 and 11, which is a criminal statute.[5]

■ Not only where a statute is enacted to correct or guard against improper conduct, which carries with it criminal sanctions, as stated in *In re Matthews Associates, Inc.*, supra, but also where statutes provide for sanctions by civil actions, such as restraints by regulatory bodies, unless the statute specifically provides therein for a private cause of action by the individual, then such an action must fail.

In a recent case of the Supreme Court, *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Court addressed the issue of private cause of action in regard to a suit under the Investment Advisors Act of 1940:

> The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction. . . . While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, . . . what must ultimately be determined is whether Congress intended to create the private remedy asserted . . 444 U.S. 11, at 15, 100 S.Ct. 242, at 245, 62 L.Ed.2d 146.

Continuing, 444 U.S. page 24, 100 S.Ct. page 249, the court held:

> . . . Section 206 of the Act here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. . . .

In an earlier case, the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975), dealing with an action for damages by a stockholder against corporate directors who violated a criminal statute prohibiting corporations from making a contribution in connection with elections, the court stated,

> Clearly, provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages . . . . Here, there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.[6]

The New Jersey Statute under which Lawrence now claims a right of action is purely a criminal statute without individual civil remedies therein. See also *Houdaille Constr. Materials v. A. T. T.*, 166 N.J.Super. 172, 399 A.2d 324 (1979), which failed to find the arguments raised in *Carrier Corp. v. J. E. Schecter Corp.*, supra, persuasive and followed *Plevy v. Schaedel*, supra. *Houdaille*, at 188, 399 A.2d at 332, stated, "[t]he statute imposes criminal penalty and must be strictly construed".

Before terminating this aspect of Lawrence's claim to the funds under 2A:102–10,

---

5. Of interest is the repeal of 2A:102–10 and 11 by the enactment of Chapter 95, Laws 1978, (2C:98–2), effective September 1, 1979, entitled, The New Jersey Code of Criminal Justice, and in its place enacted under the Criminal Code 2C:20–9. The Code provision can be described as a shotgun approach to the situation where a person obtains or retains property upon agreement or subject to a known legal obligation to make a specified payment or other disposition thereof. This section is not limited to contractors or subcontractors who obtain money and states that the one who violates the section is "guilty of theft". Nowhere, even in the new section, does it create a trust fund for civil purposes.

6. See also *Gold Fuel Service, Inc. v. Esso Standard Oil Co.*, 59 N.J.Super. 6, 18, 157 A.2d 30

(1959) (affirmed 32 N.J. 459, 161 A.2d 246, *cert. denied* 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103), wherein the court stated:

> " . . . it should be noted that merely because certain acts are required or prohibited by a statute, a cause of action does not arise because of violation of the statute. As was said in *Osback v. Tp. of Lyndhurst*, 7 N.J. 371, 376, 81 A.2d 721 (1951); where the Legislature passes a statute directing that, as a matter of public policy, certain acts be performed, but fails to provide a penalty for nonperformance or a remedy for those who may suffer through failure of such performance, it does not give rise to a cause of action."

it is of interest to note that the New Jersey Legislature has heretofore enacted legislation dealing with contracts for public improvements, specifically creating a "trust fund" as to moneys paid by the "State of New Jersey or by any agency, commission or department or by any county, municipality or school district in the state . . . shall constitute a trust fund in the hands of such person as such contractor . . . ." 2A:44–148. Without passing upon the effectiveness of that Section should it come into play during the administration of a bankruptcy estate, suffice it to say for the present that the legislature has specifically provided, through a civil statute, for payment of funds by *contractors* arising out of *public* contracts. It has not enacted a similar section for nonpublic contracts.

■ Addressing now the judgment sought by Lawrence to compel The Bank of New Jersey to pay back to the trustee all moneys it has been paid under the accounts receivable financing agreement, as stated above, the trustee has recognized the validity of the lien in favor of The Bank of New Jersey. It was properly recorded and the consideration called for under the agreement was advanced by The Bank of New Jersey to Central over the years. During that period of time The Bank of New Jersey was a secured creditor holding a lien on all accounts receivable and was paid by Central from the accounts receivable. Even if, which is not the fact as opined above, The Bank received funds which had been labeled "trust funds", the character of "trust funds" would have been lost and The Bank could retain the funds. This determination, involving "trust funds" under the statute dealing with public contracts set forth above, may be found in *American Lumberman's Mutual Casualty Company of Illinois v. Bradley Construction Co.*, 129 N.J.Eq. 278, 19 A.2d 242, 243 (E & A 1941) affirming 127 N.J.Eq. 500, 13 A.2d 783 (Ch. 1940). The court therein stated:

> The plain meaning of R.S. 2:60–212 is that money in the hands of a contractor for public work done for the state or any of its subsidiaries is impressed with a

trust for the benefit of unpaid laborers and materialmen *while such fund remains in its hands.* (Emphasis added).

Thus, even when the claim to funds by a supplier against The Bank rested on a civil statute creating a trust fund the claimant could not succeed against The Bank, which had received the proceeds of the trust payments to the contractor. It is more evident that a supplier claimant as in this case cannot succeed when it does not have the benefit of such a statute creating a trust fund apart from the criminal sanctions set forth therein.

*Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), cited by Lawrence in its brief, is not pertinent to the issue now before this court. That case recognized the right of the insurance company, which was obliged to make payment on a completion and performance bond to suppliers and laborers, to subrogation of payment from the owner as against the trustee of the bankrupt estate. The rights of the parties were fixed in the Bond when the Bond was executed.

■ Nor can Lawrence advance its position over The Bank of New Jersey upon the theory that The Bank was responsible to the suppliers and materialmen. The Bank made advances to Central, which enabled it to do its work. It filed a Financing Statement to protect its lien against accounts receivable which were, partially at least, generated by its advances to Central. That perfected security interest of The Bank may be likened to a construction mortgage. The Bank was not obliged to see to the use of the advances by it to Central. The same theory of liability by The Bank now advanced by Lawrence was resolved in the negative in the case of *First National State Bank of New Jersey v. Carlyle House Inc.*, 102 N.J.Super. 300, 246 A.2d 22 (Ch.Div. 1968), wherein the court held the bank had no duty to subcontractors. Therein the court stated, page 322, 246 A.2d at 34:

> Assuming the availability of a civil remedy in order to implicate the bank in the alleged breach of trust, there must be proof of the bank's knowing participation

in the same. *Judson v. Peoples Bank and Trust Co.*, 25 N.J. 17, 29, 134 A.2d 761 (1957). There is none.

The plaintiff, Lawrence, could have protected itself when furnishing materials and labor on the contracts between Central and the owners. The New Jersey Statute, 2A:44–64, sequi, titled Liens—Mechanics, Materialmen and Laborers in General, has complete and ample provisions wherein such creditors may guard against other liens. Merely to mention a few of such sections, see:—Notices of Intention, 2A:44–71; liability where contract filed, filing in lieu of notice of intention, 2A:44–75; filing of stop notices, 2A:44–77; observance of conditions for priority of recorded mortgages over liens, 2A:44–87 and 89. The Bank's lien was of record for suppliers or laborers to know of before advancing material or labor, and they could have perfected their own lien in accordance with the State Statutes. They failed to do so and their claim of a lien is therefore invalid as against the Trustee, *In re Matthews Associates, Inc.*, supra, and as against a creditor with a perfected security agreement. N.J.S.A. 12A:9–103, 12A:9–302 and 12A:9–313.

For the foregoing findings of fact and conclusions of law an Order shall be entered dismissing the Complaint of Lawrence seeking payment from the funds in the hands of the Trustee and/or Goodrich, and payment by The Bank of New Jersey of moneys heretofore paid it by Central, and an Order shall be entered that the lien of The Bank of New Jersey shall attach to the funds in the hands of Goodrich toward satisfaction of its debt secured by the assignment of accounts receivable, as set forth herein.