In re MIDWAY, INC., Debtor.

Karen BEZNER, Trustee for Midway, Inc., Plaintiff,

v.

UNITED JERSEY BANK, et al., Defendants.

Bankruptcy No. 88–07291.
Adv. No. 92–3400.

United States Bankruptcy Court,
D. New Jersey.

May 13, 1994.

Karen Parker, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, NJ, for plaintiff/Trustee Karen Bezner.

David Wolff, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for defendant United Jersey Bank.

Barry W. Frost, Teich, Groh & Frost, Trenton, NJ, for defendant Bd. of Trustees of Plumbers and Pipefitters Local Union No. 9.

Maria Nersesian, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for defendant Robertson–Ceco Corp.

Catherine T. O'Toole Lauritano, Granik Silverman, New City, NY, for defendant Locals 373 and 754 Joint Ben. Funds.

Eric J. Clayman, Jenkins & Jenkins, Haddon Heights, NJ, for defendant Jones Masonry, Inc.

James A. Brown, Colleran, O'Hara & Mills, Garden City, NY, for defendant Ironworkers Local 417.

William G. Wright, Farr, Lions, Burke, Gambacorta & Wright, Bellmawr, NJ, for defendant Stonhard, Inc.

Steven Vasak, Hackensack, NJ, for defendant Northern State Elec. Co.

Walter J. Greenhalgh, Robinson, St. John & Wayne, Newark, NJ, for defendant American Cyanamid.

Joseph T. Walsh, Florham Park, NJ, for defendant Exxon Corp.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

### I. INTRODUCTION

This is the court's decision on the parties' motions and cross-motions for summary judgment. The plaintiff in this adversary proceeding, Karen Bezner, trustee for the debtor Midway Inc. ("debtor" or "Midway"), filed a complaint on June 30, 1992 against United Jersey Bank ("UJB") and numerous other defendants seeking turnover of property of the estate, a determination of the extent, validity and priority of liens, and to enjoin all defendants from proceeding against the accounts receivable of the debtor. The trustee maintains that the accounts receivable, which are the subjects of counts one through eight of the complaint, are property of the estate pursuant to section 541 of Title 11, United States Code (the "Bankruptcy Code" or "Code"), and are subject to turnover under Code section 542. The complaint was amended on March 22, 1993 and again on October 20, 1993 by order of the court to permit the trustee to include claims against an additional defendant, Exxon Corp.

On September 27, 1993, prior to the second amendment to the complaint, UJB filed a motion for summary judgment against the trustee and all defendants who claim an interest in the accounts receivable. UJB as-

serted that its security interest in the debtor's accounts receivable, created by a loan and security agreement between the debtor and UJB, and perfected by UJB's filing of Uniform Commercial Code financing statements ("U.C.C.–1 filings"), granted UJB a priority over all other defendants claiming an interest in the accounts receivable. The trustee adopted this position and joined in UJB's motion on Oct. 8, 1993.[1]

On October 18, 1993, two defendants cross-moved. The first, the Board of Trustees of Plumbers and Pipefitters Local Union No. 9 ("the Plumbers, Pipefitters and Carpenters")[2], seeks a surcharge against the accounts receivable under Code section 506(c) for services rendered on the debtor's Princeton/West Windsor, New Jersey construction project. The second, Locals 40, 361 & 417 Union Security Funds ("the Ironworkers"),[3] maintain that under New York law a statutory trust exists in their favor for work performed on the debtor's New York construction project. The Ironworkers seek summary judgment on the ground that as beneficiaries of this trust, they are entitled to payment for work performed and benefits accrued prior to any payment on UJB's security interest.

On October 18, 1993 defendant American Cyanamid also moved for summary judgment, claiming that it had no record of entering into a contract with the debtor to provide materials, services and labor to its location in Wayne, New Jersey. American Cyanamid concludes that there is no factual or legal basis for the trustee's allegations concerning this location and it is therefore entitled to summary judgment.[4]

Finally, on November 5, 1993, defendant Northern State Electric Corp. ("Northern State") moved for partial summary judgment, asserting that under the contract between the debtor and Witco Chemical Company ("Witco"), which grants Witco the right to pay subcontractors under certain circumstances, Northern State's interest in the funds owed by Witco to the debtor for work done at Witco's premises in Woodcliff Lake, NJ is superior to the interest of UJB.

Other defendants claiming an interest in the accounts receivable have also filed opposition to UJB's summary judgment motion.[5]

This court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O). At issue is whether the lien of UJB's perfected security interest in Midway's accounts receivable has priority over the claims of all other defendants, thereby entitling UJB to summary judgment on each count of the trustee's complaint.

## II. FACTS

On November 4, 1988, Midway, Inc., which was in the business of industrial construction, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The

---

1. A letter memorandum filed by the trustee expressed agreement with UJB's position that its prior perfected security interest had priority over all defendants and indicated that the trustee wished to join in UJB's motion.

2. The defendant is named in the pleadings as follows: The Board of Trustees of Plumbers and Pipefitters Local Union No. 9 Pension Fund, Welfare Fund, Education Fund, Personal Fund and Annuity Fund; The Mechanical Contractors Industry Council of New Jersey, Inc.; Plumbers and Pipefitters Local Union No. 9 and Collectively Bargained Employees as Members of Local Union No. 9; United Brotherhood of Carpenters and Joiners of America.

3. The defendant is named in the pleadings as Locals 40, 361 & 417 Union Security Funds; International Association of Bridge, Structural and Ornamental Iron Workers Local No. 417; Gregory Fescoe and Frank Miller.

4. A certification filed by Midway's president, Robert Callahan, however, indicates that the billing procedure directed by American Cyanamid provided that the debtor bill "start-up" work to the American Cyanamid office in Princeton and other construction work to the Wayne office. Callahan further states that the initial trustee complaint incorrectly stated that work was performed on the Wayne office, when actually, all of the work was performed at the Princeton location. Therefore, the amounts specified in counts two and three of the complaint, when combined, accurately reflect the amount for the work performed at Princeton only.

5. The opposition of these defendants is limited to the accounts receivable that are the subjects of counts one, two and three. See infra note 7.

debtor's plan of reorganization was confirmed by the court on May 21, 1991. In September, 1991, the debtor defaulted on payments required under the plan, and ceased doing business on September 30, 1991. On February 10, 1992, the debtor's case was converted to chapter 7. Karen Bezner was appointed trustee for the debtor on February 22, 1992.

Prior to the filing of the petition, UJB and the debtor entered into a Loan and Security Agreement (the "Security Agreement") which granted UJB a security interest in, among other things, "all personal property in which the [debtor] has a present or future interest, ... including, without limitation, all present and hereafter existing or acquired accounts receivable ..." *See* Loan and Security Agreement, § 3.1A. The Security Agreement was amended on July 8, 1988 in an unspecified manner. Subsequent to the May 21, 1991 confirmation of the debtor's plan, UJB entered into a second amendment to the Security Agreement which "confirmed the continuing validity of the [original] Security Agreement and UJB's security interest in the Debtor's accounts receivable". *See* Certification of Charles Di Giacomo, Vice President of UJB, at 6 (September 27, 1993). On March 1, 1988, UJB filed U.C.C.–1 financing statements with the Middlesex County Clerk and the Secretary of State of New Jersey, which perfected UJB's security interest in the debtor's accounts receivable. The perfection of UJB's security interest was extended on November 4, 1992 through the filing of continuation statements with the Middlesex County Clerk and the Secretary of State.

At the time the case was converted to chapter 7, the debtor was involved in various construction projects. The rights of the parties in accounts receivable for work performed on these projects are the contested subject of counts one through eight of the trustee's complaint.[6] Numerous defendants have claimed an interest in these accounts receivable for labor or services provided on the projects under subcontracts with the debtor.[7]

UJB, by virtue of its perfected security interest in the accounts receivable, claims it has a lien which takes priority over all other claims against the accounts receivable.

## III. DISCUSSION

A motion for summary judgment is granted where "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Federal Rule of Civil Procedure 56(c) is incorporated by reference in the Federal Rules of Bankruptcy Procedure. Fed.R.Bankr.P. 7056. On the motions before the court, it is contended by Jones Masonry, Inc. that a genuine issue of material fact exists. This contention is incorrect because the disputed fact in question is not material for purposes of the court's decision on the sum-

---

**6.** The projects as alleged in each count of the trustee's second amended complaint are as follows:
1. Count One—Lederle Labs, A Division of American Cyanamid Co., 401 North Middletown Road, Pearl River, NY 10965.
2. Count Two—American Cyanamid Co., Clarksville Road, Princeton, NJ. (also referred to as the West Windsor Project).
3. Count Three—American Cyanamid Co., One Cyanamid Plaza, Wayne, NJ.
4. Count Four—Exxon Corp., Carteret, NJ.
5. Count Five—The Henderson Corp., 575 State Highway 28, Raritan, NJ 08869.
6. Count Six—Union Carbide Corp., 1 River Road, Piscataway, NJ 08854.
7. Count Seven—Witco Chemical Co., Woodcliff Lake, NJ.
8. Count Eight—general count naming all possible claimants who may assert claims against any account receivable.

**7.** The defendants named in the complaint include the cross-movants and those parties who have filed opposition claiming an interest in the account receivable for each construction project as follows:

1. Count One—Lederle Labs:
 a. Cross-movants the Ironworkers.
 b. Stonhard, Inc.
 c. New York Plumbers Local 373 UA Fringe Benefit Funds and Laborers Local 754 Joint Benefit Funds ("Locals 373 and 754 Funds").
2. American Cyanamid Co. Princeton/West Windsor and Wayne Projects:
 a. Cross-movant American Cyanamid Co.
 b. Cross-movants Plumbers, Pipefitters and Carpenters.
 c. Robertson–Ceco Corp.
 d. Jones Masonry Corp.
3. Witco Chemical Corp.:
 Cross-movant Northern State.

mary judgment motions.[8] The other parties do not dispute the material facts set forth in Section II above. This court must therefore determine only which party or parties is entitled to judgment as a matter of law.

█ The court must first determine whether the accounts receivable which were generated after the confirmation of the debtor's chapter 11 plan are property of the chapter 7 estate. An estate is comprised of all legal or equitable interests of the debtor as of the commencement of the case. Code section 541(a). Upon confirmation of a chapter 11 plan, the property of the estate is vested in the debtor, and the estate ceases to exist. Code section 1141(b). Conversion of a case from chapter 11 to chapter 7 does not change the commencement date of the case, and therefore does not technically create a new estate. Code section 348(a). Thus, a literal reading of these Code sections could lead to the conclusion that upon conversion from chapter 11 to chapter 7, the estate is comprised only of the debtor's remaining interests in property owned on the petition date, together with proceeds and profits thereof and property acquired by the estate. Code sections 541(a)(6) and (7). Such a reading of these Code provisions could lead to the conclusion that there is no estate to distribute when a case is converted from a post-confirmation chapter 11 to a chapter 7. "Once property has vested in the Debtor, conversion will not revest that property in the estate." *In re T.S.P. Industries,* 117 B.R. 375 (Bankr.N.D.Ill.1990) (citations omitted); *See also In re Pauling Auto Supply, Inc.,* 158 B.R. 789, 795 (Bankr.N.D.Iowa 1993).

Such a reading, however, ignores the provisions of chapter 7 providing for distribution of estate property. *See* Code sections 701 *et seq.* The *Pauling* court, after noting the argument that no estate existed upon conversion, nevertheless recognized the estate as

consisting of the assets of the reorganized debtor which were turned over to the trustee on the presumption that they were chapter 7 estate property. *See Pauling,* 158 B.R. at 795.

Other courts, when dealing with conversion of a chapter 13 case to chapter 7 after the confirmation of a chapter 13 plan or after the debtor had paid the trustee funds during the chapter 13, have held that the debtor's interests in property on the date of conversion are estate property. *See Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087 (8th Cir. 1984); *See also In re Wanderlich,* 36 B.R. 710 (Bankr.W.D.N.Y.1984). Relying upon the provisions of Code section 348(d) which treat claims arising after confirmation of a chapter 13 plan and before conversion to chapter 7 as prepetition claims in the resulting chapter 7 case, these courts found that the date of conversion was also the logical date to determine property of the estate. *See Lindberg,* 735 F.2d at 1090 (citing *In re Tracy,* 28 B.R. 189 (Bankr.D.Me.1983)); *Wanderlich,* 36 B.R. at 714; *See also* David G. Epstein, *Consequences of Converting a Bankruptcy Case,* 60 AM.BANKR.L.J. 339 (1986).

In the present matter, the parties have not raised the issue of when the estate was created. Additionally, much like in *Pauling,* it appears the parties recognize that the debtor's interest in the accounts receivable is property of the converted chapter 7 estate.[9] The court also believes that the holdings in *Lindberg* and *Wanderlich* are persuasive here.

For these reasons, the court holds that the estate consists of the debtor's interests in property, including the accounts receivable, on the date the case was converted to chapter 7. The extent of the debtor's interest in the accounts receivable must be determined in order to resolve the issues in controversy.

8. Jones Masonry Inc. asserts that a factual dispute exists concerning whether the debtor actually received funds owed by American Cyanamid on the Princeton/West Windsor, NJ project, to advance its argument that a constructive trust exists in its favor. Jones Masonry claims that until this factual issue is resolved through further discovery, UJB's motion for summary judgment is premature. The court, however, is unwilling

to accept the constructive trust theory proposed by Jones Masonry. It is therefore irrelevant whether Midway received the funds, leaving no dispute of material fact.

9. No party has argued that the accounts receivable are not property of the estate.

To do this, state law must be examined, for "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law ... Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Additionally, "[a]lthough section 541 defines property of the estate, we must look to state law to determine if a property right exists and to stake out its dimensions." *In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir.1991). The court will therefore look to the state law where each project is located to determine the parties' rights in the subject accounts receivable.[10] *See Carrier Corporation v. J.E. Schecter Corporation*, 347 F.2d 153 (2d Cir.1965).

### A. Claims against the accounts receivable for the New York Project.

#### 1. Count One: Lederle Labs, Pearl River, New York.

Three parties have filed mechanic's liens in New York for work done on this project. All three are subcontractors of Midway. Two of the three have filed opposition[11] to UJB's motion and one has cross-moved for summary judgment.[12] The parties claim, for different reasons, that their mechanic's liens have priority over UJB despite its perfected security interest in the debtor's accounts receivable.

New York law provides protection for subcontractors faced with a competing prior perfected security interest in accounts receivable.[13] "A prior perfected secured creditor in accounts receivable is not entitled to its interest in that collateral until trust beneficiaries under Article 3–A of the New York Lien Law have been satisfied in full from the assets traceable to the improvements to which they contributed as subcontractors." *In re Dunwell Heating & Air Conditioning Contractors Corp.*, 78 B.R. 667, 671 (Bankr. E.D.N.Y.1987). Article 3–A provides that funds received by an owner or contractor in connection with a contract for the improvement of real property constitute assets of a trust. *Id.* at 669 (citing N.Y.Lien Law § 70(1) (McKinney 1987)). The purpose of this trust is the payment of claims to subcontractors, laborers and materialmen arising out of the improvement to real property and incurred during the performance of the contract or subcontract. *Id.* (citing N.Y.Lien Law § 71(2) (McKinney 1987)).

The trust exists regardless of whether a contractor has actually received the payment due under a contract. "Proceeds 'due or to become due' from a construction contract are applied first to the payment of statutory beneficiaries, the contractor having a beneficial interest 'only in so much of the proceeds as remains after the claims of the beneficiaries have been settled'". *Id.* at 671 (citing *Aquilino v. United States*, 10 N.Y.2d 271, 280, 282, 219 N.Y.S.2d 254, 261, 262–263, 176 N.E.2d 826, 832 (1961)).

Moreover, persons having claims for which the trustee is authorized to use trust assets are deemed beneficiaries whether or not they have filed a notice of lien. *Id.* at 669 (citing N.Y.Lien Law § 71(4) (McKinney 1987)). Subcontractors and statutory beneficiaries are permitted to enforce their interest in the trust regardless of whether they perfect it by filing or by notice of lien. *See Aquilino*, 10 N.Y.2d at 277, 219 N.Y.S.2d at 259, 176 N.E.2d at 829.

---

**10.** The parties' arguments all assume that the law of the state in which each project was located controls the determination of whether a secured creditor or those who have provided labor and material have the first right to amounts due to a contractor for such project. The record does not disclose any contractual choice-of-law provisions or any conflicts of law arguments. The court therefore deems the legal proposition in the first sentence of this note to be stipulated, and the court will not undertake an independent analysis of that issue.

**11.** The opposing parties are Stonhard, Inc. and the Locals 373 and 754 Funds.

**12.** The Ironworkers are the cross-movants.

**13.** UJB does not argue that the New York Lien Law is not applicable to this project. *See* note 10, *supra*. UJB argues only that the other parties' interpretation of that law is incorrect.

Under New York law, the property interest of the subject defendants in the statutory trust is not part of the debtor's accounts receivable, and is therefore not part of the estate. The same is true for all claims of subcontractors who have provided labor or services on the Lederle Labs project, regardless of whether they have perfected their interest by filing or by notice of lien. *See Aquilino,* 10 N.Y.2d at 277, 219 N.Y.S.2d at 259. The debtor's interest in the account receivable is limited to what remains after the claims of the statutory trust beneficiaries are satisfied. *See* Code section 541(d) (Property of the estate is limited "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.") UJB's interest in the accounts receivable is no greater than that of the debtor.

UJB is therefore not entitled to summary judgment on count one of the trustee's second amended complaint.[14] Moreover, to the extent that the Ironworkers are beneficiaries of a statutory trust, they are entitled to judgment as a matter of law and their motion for summary judgment is granted. After the interests of the other defendants in the statutory trust are satisfied, UJB is entitled to payment of any balance remaining due on this account receivable.

**B. Claims against the accounts receivable for the New Jersey projects.**

**1. Counts Two and Three: American Cyanamid, Princeton/West Windsor and Wayne, New Jersey.**

(a) *In General.*

■ Unlike New York, New Jersey has no law creating a constructive trust in favor of subcontractors to compensate them for work performed on a private construction project.[15] Additionally, the U.S. Court of Appeals for the Third Circuit has rejected the creation of a trust in favor of subcontractors. *In re Matthews Associates, Inc.,* 394 F.2d 101 (3d Cir.1968); *See also Lawrence v. Bank of New Jersey (In re Central Piping, Inc.),* 4 B.R. 298 (Bankr.D.N.J.1980).[16] Subcontractors providing labor, materials and the like to a bankrupt contractor are merely general creditors at the time of the bankruptcy. *See Matthews,* 394 F.2d at 104; *Central Piping,* 4 B.R. at 302.

Under this precedent, all defendants asserting an interest in this account receivable for labor, material and the like are general unsecured creditors.[17] UJB is therefore entitled to summary judgment against all such general creditors due to its prior perfected

**14.** The courts's holding agrees with the general basis for the arguments of Stonhard and the Ironworkers. The court finds the arguments of the Locals 373 and 754 Funds unpersuasive for the following reasons.

Initially, these defendants misinterpret the purpose of summary judgment, which is to decide questions of law in the absence of a dispute of material fact, by erroneously asserting that the matter contains a question of law, and summary judgment is therefore precluded.

Additionally, these defendants' argument that a creditor must monitor its collateral and perfect its interest in the place where it is moved is incorrect as well. At all relevant times the debtor's place of business was New Jersey and it is the law of this jurisdiction which governs perfection of a security interest in accounts. New York Commercial Code §§ 9–103(3)(b) and (d); *N.J.S.A.* 12A:9–103(3)(b) and (d). UJB therefore had no duty to perfect its security interest in Rockland County, New York.

**15.** The New Jersey Trust Fund Act imposes a trust on funds received by a contractor from state and municipalities in favor of laborers and

materialmen for work performed under contracts for public improvement. *N.J.S.A.* 2A:44–148.

**16.** The creditors in *Matthews* and *Central Piping* sought to use the State's "misappropriation of funds" statutes to impress a trust upon funds owed to a debtor under construction contracts. *See N.J.S.A.* 2A:102–10 and 102–11. The courts in each case refused to do so because the statutes created a criminal rather than civil cause of action. *Matthews,* 394 F.2d at 103, n. 2; *Central Piping,* 4 B.R. at 301.

**17.** This includes the claim of Jones Masonry, which asserted that a question of fact existed to determine whether the debtor had received the funds in order to impose a trust upon them. Since New Jersey law does not recognize a constructive trust under these circumstances, it is irrelevant whether or not the debtor received the funds, and therefore no dispute of material fact exists which would preclude summary judgment. Jones Masonry's claim of a property interest in the account receivable for the Princeton/West Windsor project is without merit.

security interest. The remaining claims of individual creditors are addressed in the following subsections.

(b) *Claim of Robertson–Ceco Corp. ("Robertson").*

 Robertson asserts that the portion of the Count Two account receivable it is allegedly owed is not part of the chapter 7 estate due to the debtor's wrongful conduct. Robertson claims a priority over UJB based upon this assertion. No authority has been cited by Robertson, however, except for the bankruptcy court's equitable powers and a New Jersey Supreme Court case which denied a party relief based upon the doctrine of unclean hands. Moreover, it is not alleged that UJB has committed any wrongdoing which might warrant subordination of its security interest.

Additionally, although it is undisputed that Robertson has perfected a mechanic's lien against American Cyanamid as the owner of the Princeton/West Windsor property, Robertson cites no authority granting it a priority based upon its mechanic's lien over the prior perfected security interest of UJB. Therefore, this argument also fails.

(c) *Claim of the Plumbers, Pipefitters and Carpenters.*

 The Plumbers, Pipefitters and Carpenters have asserted that they are entitled to surcharge the debtor's account receivable on the Princeton/West Windsor project under Code section 506(c) for benefits accrued and work completed in September 1991, after the May 20, 1991 confirmation of the debtor's plan. It is not disputed that the Plumbers, Pipefitters and Carpenters performed the services in question at this project, or that they have a claim against the debtor in the amount which they allege. The question that must be resolved, however, is whether Code section 506(c) applies to any claims which arise after confirmation of a chapter 11 plan.

 Code section 506(c) states:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). The Third Circuit has held in *In re McKeesport Steel Castings Company,* 799 F.2d 91 (3d Cir.1986), that creditors have standing to assert claims under this section. In order to surcharge under section 506(c), a party must demonstrate that the expenses were reasonable, necessary and that they benefited the secured creditor. *In re Trim–X Inc.,* 695 F.2d 296, 299 (7th Cir.1982).

One case has stated that post-confirmation 506(c) surcharges are permissible in certain limited circumstances provided the above criteria are met. *French Market Homestead, FSA v. P.C. Ltd. (In re P.C. Ltd.),* 929 F.2d 203 (5th Cir.1991). *P.C. Ltd.* involved a claim to charge a secured creditor for administrative expenses incurred during operation of a hotel post-confirmation until the hotel was sold in accordance with a chapter 11 liquidation plan. *See P.C. Ltd.,* 929 F.2d at 204. Neither the secured creditor, who was the liquidating plan proponent, nor the bankruptcy court was aware that the debtor was paying its administrative expenses 60 to 90 days in arrears, and that some creditors would be "left in the lurch" when upon sale, ownership changed hands. *Id.* Under these circumstances, the Court of Appeals remanded the case to the bankruptcy court to determine whether the continued operation of the hotel was contemplated or necessary under the liquidation plan. *Id.* at 205.

The difficulty in permitting a post-confirmation surcharge under Code section 506(c), however, is reflected in the fact that this section is in chapter 5 of the Bankruptcy Code, which is entitled "Creditors, the Debtor, and the Estate". Chapter 5 addresses the creditors' and debtor's rights with respect to the estate. The confirmation of a plan, however, terminates the estate and revests estate property in the debtor under Code section 1141(b):

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of the plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1141(b). Once the estate is terminated upon confirmation, creditors cannot

ordinarily obtain administrative status for their claims because there is no estate to preserve. *In re Tri–L Corp.*, 65 B.R. 774, 777 (Bankr.D.Utah 1986). Claims arising in this period between confirmation and conversion are generally considered prepetition claims pursuant to Code § 348(d). *In re Pauling Auto Supply*, 158 B.R. at 793; *In re Roy Gooden Plumbing & Sewer Co.*, 156 B.R. 635, 637 (Bankr.E.D.Mo.1993). It is true that Code section 348(d) provides that any administrative expenses under Code section 503(b) which arise between confirmation and conversion are not deemed unsecured claims. However, the Plumbers, Pipefitters and Carpenters have not made any argument as to how their claims qualify as administrative expenses, and no such reason occurs to the court. It follows that the Code provisions regarding administration of the bankruptcy estate, including 506(c), are not applicable to the claims of the Plumbers, Pipefitters and Carpenters because there was no estate when the subject claims arose.[18] The cross-motion of the Plumbers, Pipefitters and Carpenters is therefore denied.

#### (d) *Claim of American Cyanamid.*

American Cyanamid has moved for partial summary judgment concerning the count three account receivable for its Wayne, New Jersey location, asserting that no contract existed with the debtor to provide labor and services to the Wayne, New Jersey offices. Robert Callahan, President of Midway has certified, however, that the debtor was directed by American Cyanamid to bill certain amounts to the Wayne office for work that was actually performed on the Princeton project. Mr. Callahan has further certified that the amounts listed in counts two and three accurately reflect the amount owed to the debtor for the Princeton project and that the trustee's complaint erroneously states that work was performed at the Wayne location. The court will therefore consider counts two and three of the trustee's complaint as essentially one count for purposes of this motion. Mr. Callahan's certification raises a genuine

issue of material fact as to these counts. American Cyanamid's cross-motion for partial summary judgment on count three is therefore denied.

#### 2. *Count Seven: Witco Chemical Company Project, Oakland, New Jersey.*

#### (a) *Claim of Northern State.*

██ By virtue of a contract between the debtor and Witco which in certain circumstances grants Witco the right in certain circumstances to pay the subcontractor directly in the event that the debtor fails to, Northern State claims that the amount it is owed is not part of the debtor's account receivable. The contract provisions form the basis of Northern State's opposition and cross-motion for summary judgment and raise the issue of whether the contract gives Northern State the right to payment or whether the funds are part of the debtor's account receivable.

The Contract states as follows:

15.5 The OWNER may withhold on account of subsequently discovered evidence, the whole or a part of any payment to such extent as may be necessary to protect the OWNER from loss on account of:

... (c) Failure of the CONTRACTOR to make payments properly to subcontractors or suppliers for materials, labor or equipment.

██ This contract provision, as well as the others brought to the court's attention, reserve the rights of the owner, Witco, to protect itself from loss in the event that a contractor, in this case the debtor, fails to pay subcontractors. Northern State, however, is not a party to this contract, and it cannot seek to enforce any provisions of the contract. A party cannot enforce provisions of a contract to which he is not privy, unless it is clear that the parties to the contract intended to confer upon him the right to enforce it. *First National State Bank v.*

---

**18.** Moreover, the *P.C. Ltd.* case is of limited weight anyway because it merely assumed, without deciding, that the post-confirmation expenses at issue therein might be expenses of administering the estate. *In re P.C. Ltd.*, 929 F.2d at 204, n.

1. In addition, the secured creditor in that case apparently argued only that the burden of proof under 506(c) had not been met, rather than that 506(c) is not applicable at all after confirmation.

*Carlyle House, Inc.,* 102 N.J.Super. 300, 321, 246 A.2d 22, 33 (Ch.Div.1968), *aff'd,* 107 N.J.Super. 389, 258 A.2d 545 (App.Div.1969). Here, no such intent is indicated. The option to enforce the contract remains with the parties to the contract. Northern State cannot assert any rights under the contract absent some legal argument or authority to do so. Since Northern State has failed to present either, the court cannot grant its motion for summary judgment.

Witco alone has the option to enforce the subject provisions of the contract in order to protect itself. Witco, as the owner, must make a determination as to whether it may suffer any loss due to nonpayment by the debtor as general contractor. The record before the court indicates that no such determination has been made. Upon determining whether any event will occur that will cause Witco to sustain a loss or upon a showing that a party such as Northern State can sustain a claim against it, Witco can invoke its right to pay Northern State directly under the contract. Absent such a determination, there appears to be no reason for Northern State to be paid prior to the debtor.

Northern State therefore cannot rely on Witco's rights in support of its motion for summary judgment, since the decision to exercise such right is not within Northern State's power. Additionally, until Witco makes its determination as to whether it will exercise this right, the extent of the debtor's interest in this account receivable remains a question of fact. Since UJB's interest is no greater than that of the debtor, UJB is not entitled to summary judgment on this count.

### 3. The Remaining Counts.

■ UJB contends that because no other responses to its amended motion were filed with the court, it is entitled to summary judgment against all non-responding defendants on all of the remaining counts of the trustee's complaint. The court agrees. The court is entitled to assume that those defendants who did not file a response have no opposition to UJB's motion, and the court will not do their job for them. UJB's motion is therefore granted as to the remaining defendants.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. UJB's motion for summary judgment is denied as to the parties who filed opposition to the motion regarding counts one, four, five, six, seven and eight of the trustee's second amended complaint. It is granted as to all counts against those parties who failed to file any opposition to the motion. It is granted against all parties as to counts two and three.

2. The Ironworkers' cross-motion for summary judgment is granted.

3. The Plumbers, Pipefitters and Carpenters' cross-motion to surcharge UJB under Code section 506(c) is denied.

4. American Cyanamid's cross-motion for partial summary judgment is denied.

5. Northern State's cross-motion for summary judgment is denied.

6. The parties' rights in the debtor's accounts receivable are to be determined in accordance with this opinion.

Counsel for UJB is to submit an order within ten days on notice under D.N.J. Local Bankr.R. 4(c).