IN the MATTER OF: Anthony B. FREEMAN, Debtor.

Beth E. Rogers and BER Law P.C. d/b/a Rogers Law Offices, Movant.

v.

Anthony B. Freeman, Respondent.

CASE NUMBER NO. 09–12732–WHD

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed March 6, 2015

Lee A. Frison Jr., Lee A. Frison Jr. PC, Atlanta, GA, for Debtor.

### ORDER

W. Homer Drake, U.S. Bankruptcy Court Judge

The above-styled case comes before the Court on *Objection to Debtor's Property Claimed as Exempt* (hereinafter the "Objection"), filed by Beth E. Rogers and BER Law Offices (hereinafter "Rogers"). Rogers seeks an order from the Court declaring that certain funds, currently held by Anthony B. Freeman (hereinafter the "Debtor") in a State Farm retirement account, are property of the Debtor's Chapter 7 estate and cannot be claimed exempt under the Bankruptcy Code [1] and applicable state law. The Debtor opposes Rogers' request. Following a hearing held on

---

1. 11 U.S.C. §§ 101 *et. seq.*

2. The Debtor's attorney stipulated to the relevant portions of the deposition testimony contained in Rogers pre-hearing Exhibits A and B

December 3, 2014, the Court instructed the parties to file briefs by January 5, 2015. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334, as a core proceeding defined under 28 U.S.C. §§ 157(b)(2)(A) & (B).

### Factual Background

The relevant facts of this case are undisputed.[2] Accordingly, the Court finds the following:

1. On July 1, 2009, the Debtor received a letter from his then-current employer, Excelon Business Services Co., notifying him that his employment would be terminated on July 31, 2009, and informing him that he would receive severance pay in the total amount of $29,826.92, less deductions for taxes. See Debtor's Dep., Jan. 16, 2014, Ex. 15, at 2 (Dkt. No. 162, Ex. B).

2. On August 3, 2009, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. *See* Debtor's Petition (Dkt. No. 1).

3. Between September 10, 2009, and October 22, 2009, the Debtor received four checks totaling $21,635.67 (hereinafter the "Severance Income"). See Debtor's Dep., Jan. 16, 2014, Ex. 17, at 1–4 (Dkt. No. 162, Ex. B).

4. Between September 29, 2009 and November 4, 2009, the Debtor invested the Severance Income into his State Farm retirement account. See Debtor's Dep., Dec. 16, 2013, Ex. 4, at 6 & 9 (Dkt. No. 162, Ex. A).

5. Sometime on or before April 5, 2010, the Debtor received bonus income of

---

(Dkt. No. 162), which were proffered by Rogers' counsel at the December 3rd hearing. *See* Hr'g Tr. 2:38:00–2:38:20, Dec. 3, 2014.

$13,395.29 (hereinafter "2010 Bonus Income"), and on April 5, 2010, he invested it in his State Farm retirement account. *See* Debtor's Dep., Jan. 16, 2014, at 22–23 (Dkt. No. 162, Ex. B); Debtor's Dep., Dec. 16, 2013, Ex. 6, at 5 (Dkt. No. 162, Ex. A).

6. On July 16, 2010, the Debtor filed his Chapter 11 Disclosure Statement. *See* Debtor's Disclosure Statement (Dkt. No. 62) (hereinafter the "Disclosure Statement"). According to the Disclosure Statement, "payment and distributions under the Plan [were to] be funded by Debtor's income from his employment." *Id.* at 6. The budget attached to the Disclosure Statement was consistent with that statement. *See id.,* Ex. C. (showing that the Debtor's salary and rental income solely shall be used to fund the Plan).

7. On February 24, 2011, the Debtor filed his First Amended Plan of Reorganization (hereinafter the "Plan"). *See* Debtor's Am. Plan (Dkt. No. 89). Under Subsection A to Article VI of the Plan, titled Source of Operating Funds, the Debtor provides only that the "projections show that there will be sufficient net operating income to pay all administrative expenses and all classes of claims as provided under the Plan." *Id.* at 11. Under Article X, the Plan stipulates that all property of the estate, except as provided for in the Plan or Confirmation Order, shall vest in the Debtor, "free and clear of all claims, liens, charges, and other interests of creditors arising prior to the Confirmation Date." *Id.* at 12.

8. On March 1, 2011, the Court confirmed the Plan. See Ct.'s Order, Mar. 1, 2011 (Dkt. No. 91).

9. Sometime on or before April 11, 2011, the Debtor received bonus income of $10,000 (hereinafter "2011 Bonus Income"), and on April 11, 2011, he invested it in his State Farm retirement account. *See* Debtor's Dep., Jan. 16, 2014, at 25–26 (Dkt. No. 162, Ex. B); Debtor's Dep., Dec. 16, 2013, Ex. 7, at 5 (Dkt. No. 162, Ex. A).

10. The Debtor voluntarily converted this case to Chapter 7 on April 29, 2013, under Section 1112(a) of the Code. See Ct.'s Order, April 29, 2013 (Dkt. No. 129).

### *Respective Legal Positions*

Rogers argues that funds received by the Debtor while a debtor in possession, including the Severance Income, the 2010 Bonus Income, and the 2011 Bonus Income, became and remained property of the bankruptcy estate and cannot be claimed as exempt. In support of this position, Rogers submits that the bankruptcy estate was established upon the filing of the petition, the estate acquired property during its pendency in Chapter 11, the acquired property flowed through to the Chapter 7 estate upon conversion, and the acquired property retained its initial character, rendering it ineligible for exemption. In response, the Debtor in effect argues that the estate reset upon conversion and that property of the estate is determined by looking to the date of the filing of the petition. Under the Debtor's theory, the Chapter 7 estate cannot be augmented by sections of the Code, which may have been applicable in Chapter 11, that are no longer applicable now that the case resides in Chapter 7; consequently, the Debtor believes that, since all the

property in question came into the estate post-petition, none of it is property of the estate for which an exemption would be necessary.

As is often the case, the answer lies somewhere between the two positions. As discussed further below, the Court finds that: (1) the Severance Income became property of the estate upon the filing of the Chapter 11 case and the 2010 Bonus Income became property of the estate upon its being earned by the Debtor, but both of these property interests vested in the Debtor upon confirmation of the Plan and did not revest in the bankruptcy estate upon conversion of the case to Chapter 7; and (2) the 2011 Bonus Income became property of the estate upon its being earned by the Debtor post-confirmation and remained property of the estate upon conversion of the case to Chapter 7. The Court also concludes that, although the Debtor may be entitled to exempt a portion of the 2011 Bonus Income, the currently claimed exemption is defective. Accordingly, the Court sustains in part Rogers' objection to the exemption, subject to the Debtor's right to amend Schedule C to claim a proper exemption.

### Analysis

Two happenings are pivotal to determining the outcome of this case: the confirmation of the Chapter 11 Plan and the conversion of this case to Chapter 7. For organizational purposes, the Court shall first analyze the effect of confirmation on property of the estate.

### I.

█ It is settled law that once a bankruptcy case is commenced, property owned by the debtor is distinct from property that becomes part of the bankruptcy estate. *In re Floyd,* 423 B.R. 579, 581 (Bankr.M.D.Ga.2009) (quoting *In re Bell,* 225 F.3d 203, 215 (2d Cir.2000)). Section

1141 provides that "[e]xcept as otherwise provided for in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). Despite the apparently clear language, there is a split of authority as to whether the post-confirmation conversion of a Chapter 11 case to Chapter 7 "revests" property of the debtor in the Chapter 7 estate. Judge Isicoff thoroughly summarized this debate in *In re Sundale, Ltd.*:

As I already noted, when a plan is silent as to the vesting of assets upon conversion after default, courts disagree whether and which assets of a reorganized debtor will revest in the bankruptcy estate upon post-confirmation conversion. This debate turns primarily on the interpretation of 11 U.S.C. § 348(a). Section 348(a) provides that, upon conversion of a chapter 11 case to a chapter 7 case, the conversion order "constitutes an order for relief under the chapter to which the case is converted," however, subject to exceptions not applicable here, conversion "does not effect a change in the date of ... the commencement of the case...." 11 U.S.C. § 541(a)(1) provides that property of the estate is "all legal or equitable interests of the debtor in property as of the commencement of the case."

Some courts have interpreted section 348 to mean that only property owned by the debtor when the original case was commenced will revest in the estate upon conversion of a substantially consummated chapter 11 case. *Smith v. Lee (In re Smith),* 201 B.R. 267 (D.Nev. 1996), *aff'd,* 141 F.3d 1179 (9th Cir.1998). Other courts have interpreted this provision to mean that any property held by the reorganized debtor on the confirmation date revests in the chapter 7 estate. *See Carey v. Flintridge Lumber Sales,*

Inc. (*In re RJW Lumber Co.*), 262 B.R. 91 (Bankr.N.D.Ca.2001) (court held avoidance actions revested in the chapter 7 trustee). Still other courts have held that in addition to assets that vested in the reorganized debtor on the confirmation date, assets generated post confirmation vest in the chapter 7 estate as well. *See Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585, 590 (Bankr.D.N.J.1994). In *Bezner* the court held that the debtor's post-confirmation pre-conversion accounts receivable became property of the chapter 7 estate upon conversion. While the court recognized that, pursuant to section 348(a), conversion of the chapter 11 case to chapter 7 "does not change the commencement date of the case and therefore does not technically create a new estate ...", the court nonetheless held that a strict reading of these Code provisions would mean there would be no assets to distribute upon conversion, and therefore "ignores the provisions of chapter 7 providing for distribution of estate property." *Id.* at 590.

A slightly different approach was used by the Ninth Circuit in *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer Mtg. Entities)*, 264 F.3d 803 (9th Cir.2001). In *Pioneer* the court held that the provisions in the failed but confirmed chapter 11 plan which provided for distribution of proceeds to investors and the bankruptcy court's continuing jurisdiction "to oversee [the] implementation of the plan ..." should be interpreted as plan provisions, albeit not specific, that revested assets in the estate upon conversion. *Id.* at 807.

Conversely, other courts have examined 11 U.S.C. § 1141 and have held that conversion does not rescramble the egg. An extreme view is reflected in *In re TSP Industries, Inc.*, 117 B.R. 375 (Bankr.N.D.Ill.1990). In *TSP* the court held that, in the absence of a plan provision, no assets revest when a case is converted to a chapter 7 case post-confirmation and therefore no estate is created upon conversion. "There are no provisions in the Bankruptcy Code that provide for the recreation of an estate upon the post-confirmation conversion of a confirmed chapter 11 to a case under chapter 7. Put another way, once property has vested in the Debtor, conversion will not revest that property in the estate." *Id.* at 377–378. *See also Pauling Auto Supply Inc.*, 158 B.R. 789 (Bankr.N.D.Iowa 1993) (the court questioned in dicta whether there can be an estate upon a post-confirmation conversion if there are no estate assets to distribute).

Other courts have held that, while an estate is created upon conversion, the assets that vested in the debtor upon confirmation do not revest in the chapter 7 estate. *See Carter v. Peoples Bank & Trust Co. (In re Carter)*, 201 B.R. 838 (Bankr.S.D.Ala.1996). In holding that conversion of a case post-confirmation does not "undo" the plan, the court noted that once assets vest in a reorganized debtor the assets fall outside the bankruptcy court's jurisdiction, as the assets are no longer property of the estate. *Id.* at 849–50. Moreover, the court noted, post-confirmation conversion of a case is neither revocation nor modification, the timing for each of which is strictly limited under the Bankruptcy Code, and therefore the consequences of conversion must necessarily be different from the consequences of revocation or modification or the revocation and modification provisions are rendered superfluous. *Id. Accord K & M Printing*, 210 B.R. 583 (Bankr.D.Ariz. 1997) (the court recognized that there

can be an estate post-conversion but if there are no assets to administer conversion may not be in the best interests of the estate or the creditors); *In re Smith*, 201 B.R. 267, 274 (D.Nev.1996) (to say there can be no conversion once there is a confirmed plan would render portions of section 1112 a nullity). *In re Sundale, Ltd.*, 471 B.R. 300, 304–06 (S.D.Fla.2012). Finding the statute "unambiguous[,]" Judge Isicoff ultimately agreed with the view that, although there is a post-conversion estate, once property vests in the debtor, it does not revest in that estate. *Id.* at 306 ("However, I agree, as do other courts, that, in the absence of a plan provision to the contrary, conversion does not revest property in the estate that vested in the reorganized debtor upon confirmation.").

The Court's own survey of the legal landscape confirms that the weight of authority emphatically supports the conclusion reached in *Sundale*. *See In re Bell*, 225 F.3d 203, 216 (2d Cir.2000) ("[N]o provision in the Code [ ] effects the recapture by the estate of previously [vested] property upon conversion of a case from Chapter 11 to Chapter 7. Section 348 does not effect such a reversal."); *id.* (quoting 3 COLLIER ON BANKRUPTCY ¶ 348.08, at 348–22 & n.2 (reproducing 1983 Advisory Committee Note to Rule 1019) ("[R]ule [1019] ... implements § 348 of the Code.... The rule is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7."))); *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 461 (6th Cir.1991) (holding that the Chapter 7 trustee in a converted case could not avoid and recover a post-confirmation transfer of property occurring during the Chapter 11 phase because, under § 1141(b), Chapter 11 property vested in the debtor upon confirmation of the plan and § 549(a) applies only to the recovery

of property of the estate); *In re L & T Mach., Inc.*, 2013 WL 3368984, at *5 (Bankr.D.Kan. July 3, 2013) ("Whatever part of that property remaining in the debtor's possession on the day of confirmation ... vested in the debtor under § 1141(b). No Code provision 'unvests' the property back to the estate."); *In re BNW, Inc.*, 201 B.R. 838, 848–49 (S.D.Ala. 1996) ("As discussed above, upon confirmation, all property of the estate vests in the Debtor.... This vesting means the property is no longer 'property of the estate' which is subject to bankruptcy jurisdiction."); *In re Brown*, 178 B.R. 722, 727 (E.D.Tenn.1995) ("[W]here property leaves the bankruptcy estate and vests in the debtor, courts have had no difficulty in recognizing that conversion does nothing to recapture the property."); *In re Winom Tool & Die, Inc.*, 173 B.R. 613, 618–19 (Bankr.E.D.Mich.1994) (holding that property removed from bankruptcy estate upon entry of plan confirmation order remained outside of estate following conversion of bankruptcy case to one under Chapter 7); *Robb v. Lybrook (In re Lybrook)*, 107 B.R. 611, 613 (Bankr.N.D.Ind.1989) ("[Section 348] should not be read as a nullification act."), *affd*, 135 B.R. 321 (N.D.Ind.1990), *affd*, 951 F.2d 136 (7th Cir.1991).

The Court acknowledges that the conclusion reached in *Sundale* is not unanimous. *See, e.g. In re Consol. Pioneer Mortg. Entities*, 264 F.3d 803, 807–08 (9th Cir.2001) (interpreting under the court's "broad powers" specific language in a plan provision as revesting property in the conversion estate); *In re Calania Corp.*, 188 B.R. 41, 43 (Bankr.M.D.Fla.1995) (finding conversion of a substantially consummated Chapter 11 case "would be utterly pointless if by virtue of Section 1141 there would not be any assets for the Chapter 7 trustee to administer"); *In re Midway, Inc.*, 166 B.R. 585, 590 (Bankr.D.N.J.1994)

("[A] literal reading of these Code sections ... could lead to the conclusion that there is no estate to distribute when a case is converted from a post-confirmation chapter 11 to a chapter 7 ... [and] ignores the provisions of chapter 7 providing for distribution of estate property.").

■ The Court agrees, however, with the reasoning of *Sundale*. There is a post-conversion estate, but, absent a provision in the Plan or confirmation order specifying otherwise, property of the estate on the date of confirmation vests in the debtor at confirmation and does not revest in the post-conversion estate.[3] A plain reading of the statute mandates only such a holding. Additionally, as shall be discussed, *infra*, the Court disagrees with the premise, relied upon by contrary cases, that the vesting of property of the estate in the debtor at confirmation necessarily leaves the converted estate void of property for distribution by a Chapter 7 trustee upon conversion.

## II.

Having determined that—unless otherwise stated in the Plan—property of the estate at confirmation vests in the debtor and stands outside of the post-conversion Chapter 7 estate, it is essential that the Court identify the property at issue to which that principle applies. As the statutory provisions at issue in a Chapter 11 case (sections 1115(a)(2) and 1141(b)) are virtually identical to sections 1306 and 1327(b), the Court shall proceed by extra-polating from the Eleventh Circuit's precedent regarding this issue in the Chapter 13 context.

The Eleventh Circuit has twice recognized that, by their very language, Sections 1306 and 1327 are in tension with one another. *See In re Waldron*, 536 F.3d 1239 (11th Cir.2008); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333 (11th Cir.2000). Section 1306(a)(2) provides that property of the estate includes "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted...." 11 U.S.C. § 1306(a)(2). Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). In *Telfair*, the court reconciled these two provisions by adopting the "estate transformation approach," which instructs courts to "read the two sections ... to mean simply" that, though property is brought into the estate at commencement and by means of Section 1306, "the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."[4] *Telfair*, 216 F.3d at 1340.

Subsequently, the Eleventh Circuit clarified in *Waldron* that the "estate transformation approach" applies only to property in the estate at confirmation, and not to property of the estate acquired after con-

3. There is no binding precedent in the Chapter 11 context guiding the Court as to what property leaves the estate, but based on analogous Eleventh Circuit Court of Appeals holdings in the Chapter 13 context, *see infra*, that which is not committed to the repayment plan vests in the debtor, thus leaving the estate.

4. At first blush, this language, "as is not necessary," may seem contradictory to the Court's earlier holding that all property vests in the Debtor, but the holding in Part I distinguishes plans reserving property for the estate from those which do not. Chapter 13 is essentially a contract whereby the Debtor pays over his excess earnings and in return gets to keep certain pre-petition property. In essence, Chapter 13 plans specifically provide for net post-petition earnings to remain property of the estate after confirmation.

firmation. *Waldron,* 536 F.3d at 1242–43. ("New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to him [under 1327(b) ]."). *Waldron* stands for the proposition that 1306(a) "refills" the estate post-confirmation. *Id.* at 1242 ("Section 1306(a) does not mention the confirmation of the debtor's plan as an event relevant to what assets are property of the estate."). In sum, property of the estate that existed at confirmation is returned to the debtor, unless such property is necessary to the fulfillment of the terms of the plan (for example, a pre-confirmation plan payment). Property of the estate acquired after confirmation, "but before the case is closed, dismissed, or converted[,]" does not vest in the debtor and remains property of the estate. *Id.* at 1242–43; *see also* 11 U.S.C. § 1306(a). Given the fact that the statutory provisions at issue in this case are virtually identical to those at issue in *Telfair* and *Waldron,* the Court concludes that the approaches employed by the court in those cases "should be applied to §§ 1115 and 1141 in the individual chapter 11 debtor context." *In re Meyrowitz,* 2010 WL 5292066, at *5 (Bankr.N.D.Tex. Dec. 20, 2010). Accordingly, the Court will apply these extrapolated principles to determine the extent of the property of the Debtor's Chapter 11 estate at the time of the conversion.

■ First, as to the Severance Income, Section 541 provides that property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541 has been generously construed to include "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative,

and derivative." *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993) *abrogated* on other grounds by *Law v. Siegel,* ― U.S. ―, 134 S.Ct. 1188, 1195, 188 L.Ed.2d 146 (2014). While federal law controls what becomes property of the estate, state law generally determines whether an equitable or legal interest existed at the time of bankruptcy. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■■ The Debtor acquired a nonpossessory interest in the Severance Income on July 1, 2009, when he received the letter terminating his employment with Excelon, vesting in him a right to receive severance pay. Thereafter, when the bankruptcy case was commenced on August 3, 2009, the Debtor's pre-petition interest in the Severance Income became property of the bankruptcy estate. Nevertheless, the Debtor only stipulated that he would fund the Plan from "income from his employment." *See* Debtor's Disclosure Statement, at 6 (Dkt. No. 62). The Debtor's Disclosure Statement and accompanying budget make clear that the Debtor did not intend to allocate the Severance Income to the Plan. Because the Plan did not require the Severance Income to fulfill the Debtor's obligations under the Plan and because no other provision reserved the property for the estate, the Severance Income vested in the Debtor at confirmation and did not revest in the estate upon conversion.[5]

■ Second, the 2010 Bonus Income became property of the Debtor's Chapter 11 estate as a result of Section 541(a)(7), which includes as property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). In Chapter

---

5. Although this may seem inequitable to creditors, the Court notes that creditors have a means of protecting themselves by rejecting or objecting to confirmation of the Plan.

11, Section 1115(a)(2) expands estate property to "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted...." 11 U.S.C. § 1115(a)(2).

There appears to be no dispute that the Debtor earned the 2010 Bonus Income from services rendered after the commencement of this case. There also can be no dispute that the Debtor received the 2010 Bonus Income prior to the confirmation of the Plan. Accordingly, the 2010 Bonus Income represented property of the estate on the date of confirmation. Furthermore, the Disclosure Statement clearly references the attached budget when stating that the Debtor's income from employment will fund the Plan, and the budget depicts a periodic monthly salary as the source of funding, void of any reference to prospective bonus income. Therefore, the Court finds that there was no provision reserving the 2010 Bonus Income for the estate and the 2010 Bonus Income was not necessary to the Debtor's obligations under the Plan. Consequently, the 2010 Bonus Income vested in the Debtor at confirmation and did not revest in the estate upon conversion.

█ Finally, the 2011 Bonus Income, like the 2010 Bonus Income, entered the Chapter 11 bankruptcy estate upon being earned and, because it was earned post-confirmation, did not revest in the Debtor upon confirmation. There is no dispute that the Debtor earned the 2011 Bonus Income from post-petition services rendered post-confirmation.[6] Therefore, in accordance with *Waldron* and pursuant to Section 1115(a)(2), the 2011 Bonus Income could not have vested in the Debtor upon confirmation and was property of the estate at the time of conversion.

### III.

The Court turns then to whether the 2011 Bonus Income, the only one of the three property interests at issue remaining in the Chapter 11 estate at the time of the conversion, became property of the Chapter 7 estate upon conversion. Again, there appears to be a divergence of opinion on the matter. And again, the debate centers upon the appropriate interpretation of Section 348(a).

In addition to the property owned by a debtor on the petition a date, a Chapter 7 estate includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The estate, under Section 541, may also be enlarged by "[a]ny interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C.

---

**6.** Although, this action stems from Rogers objection to exemptions, for initial purposes, the proceedings have transformed it into a declaration that the property in question, or a portion thereof, is property of the Chapter 7 bankruptcy estate, consigning the burden to Rogers. *See, e.g. In re Scotchel,* 491 B.R. 739, 743 (Bankr.N.D.W.Va.2013). Rogers satisfied this portion of the burden by establishing a *prima facie* case that the Debtor received the 2011 Bonus Income after confirmation. The burden therefore shifted to the Debtor to show that the he earned the 2011 Bonus Income prior to confirmation. *See, c.f. In re*

*Holt,* 357 B.R. 917, 921 (Bankr.M.D.Ga. 2006). There is no evidence or other information before the Court showing that the 2011 Bonus Income was "guaranteed" or "annualized" or otherwise earned on some form of accrued, pro-rated, or commission basis, which would give rise to at least a portion of its being "earned" prior to its being paid to the Debtor in April of 2011. *See, c.f. In re Commercial Financial Services, Inc.,* 246 F.3d 1291, 1294 (10th Cir.2001). Accordingly, the Court shall consider it a discretionary bonus that was unearned prior to being paid.

§ 541(a)(7) (emphasis added). In an individual Chapter 11 case, the effects of Section 541(a)(6) are countered by Section 1115(a)(2), which, like Sections 1306(a)(2) and Section 1207(a)(2), provide that all "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted to a case under [another] chapter" become property of the estate. 11 U.S.C. § 1115(a)(2); *see also* 11 U.SC. §§ 1306(a)(2); 1207(a)(2). Upon conversion of a case from Chapter 11, 12, or 13, Section 348(a) stipulates "[c]onversion of a case ... to ... another chapter ... constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Section 348(f) provides an exception to the effects of section 1306(a)(2) upon the conversion of the case, as "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion," provided that the debtor did not convert the case in bad faith. 11 U.S.C. §§ 348(f)(1)(A); (2).

Reading Sections 541(a), 1115(a)(2), and 348 together, it is unclear whether an individual Chapter 11 debtor's post-petition, pre-conversion earnings are included in a post-conversion Chapter 7 estate. On the one hand, upon conversion, the date of the commencement of the case does not change and Section 541(a)(6) prohibits income derived from services performed by a Chapter 7 debtor after commencement from becoming property of the estate. On the other hand, while the case was in Chapter 11, post-petition services income became property of the estate by virtue of Section 1115(a)(2) and Section 541(a)(7), and, unlike in a case converted from Chap-

ter 13, no statutory provision expressly states that such income cannot be included in the converted Chapter 7 estate.

The Debtor directs our attention to *In re Markosian,* 506 B.R. 273 (9th Cir. BAP 2014). In *Markosian,* the debtors initially filed for Chapter 7 before converting the case to Chapter 11 and then reconverting the case back to Chapter 7. *Id.* After conversion of the case back to Chapter 7, the debtors received approximately $100,000 in bonus income earned for services rendered while Chapter 11 governed the case. *Id.* at 274. The bankruptcy appellate panel held that "personal service income that came into Debtors' chapter 11 estate [under Section 1115] is recharacterized as property of the debtor under § 541(a)(6) when the case is converted to chapter 7" because, in a Chapter 7 case, Section 541(a)(6) excludes post-petition services income from the estate and Section 348(a) does not change the date of the commencement of a case. *Id.* at 276. Consequently, any personal services income earned post-petition, pre-conversion must be excluded from the Chapter 7 estate.

In explaining its determination, the *Markosian* Court acknowledged that the Code designates no provision parallel to Section 348(f)—specifically providing that property of the estate for a Chapter 13 case converted to Chapter 7 is construed as of the petition date—for Chapter 11 cases. *Id.* at 276. However, the court found this of no concern, because Congress added subsection (f) well before it enacted Section 1115—which conforms Chapter 11 to the other reorganization chapters by making after acquired property of a debtor property of the estate—giving its silence "little ... significance" and because the court construed, based on legislative history, the inclusion of subsection 348(f) as merely clarification in "resolv[ing] a split among courts" about the meaning and pur-

pose of subsection (a). *Id.* at 277. In the end, the *Markosian* Court found no reason to penalize debtors for first attempting a repayment plan under Chapter 11. *Id.*

The case of *In re Evans,* 464 B.R. 429 (Bankr.D.Colo.2011), cited favorably by *Markosian,* provides a bit more in-depth analysis. According to *Evans,* "property of the estate under § 541 is to be re-assessed and determined as of the original petition date following a conversion from another chapter to a Chapter 7 case." *Id.* at 439 (internal citation omitted). *Evans* reached this conclusion after determining that this interpretation is consistent with the history concerning the interplay between Sections 1306 and 348 in Chapter 13 cases. *Id.* As *Evans* stated, prior to 1994:

> [t]wo lines of cases developed as to the appropriate date for determining what would be considered "property of the estate" in a converted case. Some courts held that, upon conversion from Chapter 13 to 7, the date of conversion would control and all property of the Chapter 13 estate, including after-acquired property pursuant to § 1306(a), would be included in the Chapter 7 estate. *In re Lybrook,* 951 F.2d 136, 138 (7th Cir. 1991) (holding "the Chapter 13 estate passes unaltered into Chapter 7 upon conversion."). *See Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087, 1090 (8th Cir.1984) (holding the date of conversion, and not date of filing of the original Chapter 13 petition, determines what exemptions may be claimed); *In re Calder,* 973 F.2d 862, 866 (10th Cir. 1992). Other courts held that the original petition date would control, meaning that a debtor's "earnings" acquired after the petition date would be excluded by the Earnings Exception, even though § 1306(a) would have included them up to the conversion date. *See In re Bobroff,* 766 F.2d 797 (3d Cir.1985); *In re Horton,* 130 B.R. 326, 328 (Bankr.

D.Colo.1991); *In re Gorski,* 85 B.R. 155 (Bankr.M.D.Fla.1988).

*Id. Evans* concluded that when Congress amended Section 348 to include subsection (f), "[i]t clearly intended to abrogate the rationale underlying the *Lybrook* line of cases." *Id.* at 440 (citing H.R. Rep. 103–835, reprinted in 1994 U.S.C.C.A.N. 3340, 3366).

The trustee in *Evans* argued that, under principles of statutory interpretation, where Congress enacts a provision that applies to one section but fails to enact a provision addressing identical language in another section, the omission should be understood as intentional. *Id.* While acknowledging the argument, the *Evans* Court disposed of the matter by referencing that the "maxim ... is 'subordinate to the primary rule that the legislative intent governs the interpretation of the statute. Thus, it can be overcome by a strong indication of contrary legislative intent or policy.'" *Id.* (quoting 2A Norman J. Singer, J.D. Shambie Singer, Statutes and Statutory Construction § 47:23 (7th ed.2007)).

Moreover, *Evans* found other justifications for Congress' apparent oversight.

> "'[T]his maxim has been held to be inapplicable if there is some special reason for mentioning one thing and none for mentioning another which is otherwise within the statute.' Thus, it is also possible to interpret the specific reference to Chapter 13 cases in § 348(f) as necessary to resolve a split of authority that had arisen only in cases converted from Chapter 13 to Chapter 7. Otherwise the general language of § 348(a) was sufficient to convey the message in all other contexts."

*Id.* at 440–41(quoting 2A Norman J. Singer, J.D. Shambie Singer, Statutes and

STATUTORY CONSTRUCTION § 47:23 (7th ed.2007) (internal citation omitted)).

Additionally, *Evans* declared that the "maxim" would also be disregarded where application would "thwart legislative intent." *Id.* at 441. Because a debtor would be disadvantaged in Chapter 7 for first attempting a repayment plan under Chapter 11, a contrary interpretation would discourage the use of Chapter 11 for repayment of creditors, a goal that could not "be what Congress intended." *Id.* Accordingly, *Evans* chose to interpret conversion from Chapter 11 as not requiring any different result as that from Chapter 13. *Id.*

The contrary line of cases relies almost entirely upon Congress' failure to enact a provision parallel to Section 348(f)(1)(A) for Chapter 11 Debtors. For example, in the case of *In re Tolkin,* 2011 WL 1302191 (Bankr.E.D.N.Y.2011), the court said:

> The language of this statute parallels the language of § 1306, and accomplishes the same goal of broadening the scope of property of the debtor's estate significantly beyond the parameters of § 541. However, unlike in a Chapter 13 case, there is no provision similar to § 348(f) to modify the result upon conversion of a Chapter 11 case to another chapter.*In re Quillen,* 408 B.R. 601, 620 n. 33 [ (Bankr.D.Md.2009) ] (". . . Section 1115 . . . is identical to Section 1306. Curiously though, no counterpart to Section 348(f) was codified in BAPCPA to correspondingly adjust the reach of Section 1115."). Therefore, what is captured as property of the debtor's estate under § 1115 remains as property of the estate, even after conversion of the case to another chapter.

*Id.* at *10. Likewise, the court in *In re Hoyle,* 2013 WL 3294273 (Bankr.D.Idaho June 28, 2013), opined:

> "Where the statute's language is plain, the sole function of the courts is to

enforce it according to its terms, for courts must presume that a legislature says in a statute what it means and means in a statute what it says there." . . . [And] "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'"

*Id.* at *6 (quoting *In re Meruelo Maddux Properties, Inc.,* 667 F.3d 1072, 1076–77 (9th Cir.2012) (quoting *Lamie v. U.S. Trustee,* 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)). Accordingly, *Hoyle* concluded "that, in light of the omission of a provision equivalent to § 348(f)(1) applicable to the converted chapter 11 case, Debtor's arguments that the DIP accounts at conversion are not 'property of the estate' does [sic] not hold." *Id.* at *7.

This Court begins its own analysis with the language of the statute itself, keeping in mind that "[s]tatutory construction . . . is a holistic endeavor." *Smith v. U.S.,* 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (quoting *United Savings Assn. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

At the outset, the Court observes that the statutes are clearly ambiguous as, reading Sections 541(a), 1115(a)(2), and 348(a) together, it is unclear whether post-

petition pre-conversion earnings are included in a post-conversion Chapter 7 estate. Because these statutes are susceptible to various reasonable interpretations, the Court must look deeper. *Lindley v. F.D.I.C.*, 733 F.3d 1043, 1055 (11th Cir. 2013) ("Statutory language is ambiguous if it is susceptible to more than one reasonable interpretation.") (internal quotations omitted); *see also U.S. v. Yates*, 733 F.3d 1059, 1064 (11th Cir.2013) (" 'When the text of a statute is plain, ... we need not concern ourselves with contrary intent or purpose revealed by the legislative history.' ") (quoting *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir.2008)).

▮ "Where there can be more than one reasonable interpretation, " 'the courts are left to determine [the statute's] meaning by looking to the legislative history and employing the [other] canons of statutory construction.' " *Lindley v. F.D.I.C.*, 733 F.3d 1043, 1055 (11th Cir.2013) (quoting *U.S. Steel Mining Co. v. Dir., OWCP*, 719 F.3d 1275, 1283 (11th Cir.2013)). One such canon of statutory interpretation is *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others"). BLACK'S LAW DICTIONARY 701 (Bryan A. Garner, ed. 10th ed.2014). In other words, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

▮ Application of this cannon of statutory construction supports the conclusion that, upon conversion of a Chapter 11 case, property of the estate includes the debtor's post-petition pre-conversion earnings because Section 348(f) excludes such property from the estate only in a Chapter 13 case. In 1994, Congress amended Section 348 to include subsection (f). When a Chapter 13 case is converted, subsection (f) negates the specific impact of Section 1306 by designating property of the estate as "property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). It could be argued that Congress' failure to apply Section 348(f) to Chapter 11 was not intentional, for at the time of the 1994 amendment, Chapter 11 did not have a provision similar to Section 1306, which brings into the estate post-petition service income of an individual debtor. However, Chapter 12 did contain such a provision, and Congress also neglected to apply Section 348(f) to Chapter 12 debtors. *See* 11 U.S.C. § 1207 (added and amended Pub.L. 99–554, 100 Stat. 3108 (1986)). Section 348(f), by its plain language, only particularizes how estate property is to be determined in cases converted from Chapter 13. Section 348(f) does not limit the broadened scope of Section 1207, and in 2005, when Congress added Section 1115 to Chapter 11, Congress did not amend Section 348. " 'Congress is presumed to know the content of existing, relevant law, and ... [,]' " unlike the Ninth Circuit's caution against "divin[ing] congressional intent from congressional silence[,]" *see In re Markosian*, 506 B.R. 273, 277 (9th Cir. BAP 2014) (quoting *Polar Bear Prods., Inc. v. Timex, Corp.*, 384 F.3d 700, 717 (9th Cir.2004)), the Eleventh Circuit has counseled that " 'where Congress knows how to say something but chooses not to, its silence is controlling.' " [7]

---

7. The Court acknowledges that the Eleventh Circuit occasionally diverges from this position, but it does so only where such inferences prove contrary to clear legislative intent, *see In re Piazza*, 719 F.3d 1253, 1269 (11th Cir. 2013) (quoting *Burns v. United States*, 501

*Lindley v. F.D.I.C.,* 733 F.3d 1043, 1056–57 (11th Cir.2013) (quoting *Griffith v. United States,* 206 F.3d 1389, 1394 (11th Cir. 2000)). Accordingly, this Court holds that property acquired by the estate under Section 1115 and Section 541(a)(7) remains estate property upon conversion of a case from Chapter 11 to Chapter 7 (so long as it has not vested outside the estate as discussed above).

The Court is not dissuaded from its holding by the argument made in *Evans,* and echoed in *Markosian,* that legislative intent can override the implication that Congress intentionally omits what it fails to include. *In re Evans,* 464 B.R. 429, 440 (Bankr.D.Colo.2011). While *Evans* went on to conclude that Congress' clear legislative intent in adding Section 348(f) was to "abrogate the rationale underlying" the line of cases holding that property of the estate at the time of conversion from Chapter 13 to Chapter 7 becomes property of the Chapter 7 estate, *id.* having examined the sparse legislative history concerning the enactment of Section 348(f), this Court concludes that *Evans* infers too much.

The House Report concerning the enactment of Section 348(f) states as follows:

> This amendment would clarify the Code to resolve a split in the case of law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does [sic] not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the ·home· could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.
>
> This amendment overrules the holding in cases such as *Matter of Lybrook,* 951 F.2d 136 (7th Cir.1991) and adopts the reasoning of *In re Bobroff,* 766 F.2d 797 (3rd Cir.1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

140 Cong. Rec. H10770 (daily ed. Oct. 4, 1994) (section-by-section description of H.R. 5116); *see also* H.R.Rep. No. 835,

---

U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)), an issue, as discussed *infra,* not at play in this matter, and typically where the provisions in question are not modeled after one another or are couched in very different terms. *Id.* (quoting *Gomez–Perez v. Potter,* 553 U.S. 474, 128 S.Ct. 1931, 170 L.Ed.2d 887, 486–87 (2008)).

103d Cong.2d Sess. 57 (1994) (same). *Evans* and *Markosian* have focused on Congress' use of "clarify" to the exclusion of the whole. Congress never stated that the *Lybrook* line of cases wrongly decided the issue. Instead, Congress legislatively "overruled" those cases as they apply in conversions from Chapter 13. This is supported by the context of the remainder of the report. In paragraph one, Congress recognized that the exact same issue that arose in *Lybrook et al.* could arise in cases converted from Chapter 12, and the same rationale could be applied, but the text of the amendment did not assimilate conversion from Chapter 12 into its language. Rather, Congress adopted only the policy reasoning behind *Bobroff*, to which the entirety of the second paragraph is dedicated. At the time, Congress did not want to disincentivize debtors from filing Chapter 13 cases and attempting to repay their debts *via* a repayment plan. It knowingly chose, at that time, not to include cases converted from Chapter 12, and it specifically chose in 2005 not to amend section 348 to include a parallel provision for individual Chapter 11 debtors when it enacted Section 1115(a)(2), presumably finding the policy not as compelling in cases converted from those Chapters. In fact, at the same time Congress enacted Section 1115, it enacted provisions that arguably reduce the necessity for such means. In 2005, the BAPCPA codified the "means test" for potential Chapter 7 debtors (with primarily consumer debts), whereby a debtor's case would be dismissed as an abuse of Chapter 7 if the debtor's current monthly income, reduced by allowances for monthly expenses, equaled or exceeded a specified threshold amount. *See* 11 U.S.C. § 707(b). The Chapter 7 means test now ensures that such debtors cannot receive relief in Chapter 7, making Chapter 11 or Chapter 13 their only viable option. This reduces the need to worry about whether such debtors would choose to file Chapter 13 if faced with the possibility of post-petition property becoming property of the Chapter 7 estate upon conversion.

A second canon of statutory interpretation—the avoidance of absurd results–supports the Court's interpretation of the legislative history. *See, c.f. Shaw v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 605 F.3d 1250, 1254 (11th Cir.2010) (reading a statute to avoid absurdity) (citing *Fla. Birth–Related Neurological Injury Comp. Ass'n v. Fla. Div. of Admin. Hearings,* 686 So.2d 1349, 1355 (Fla.1997)). Assuming *arguendo* that Section 348(f) only clarifies what Congress intended for Section 348(a) to accomplish, the Court runs into the problem of rationalizing Section 348(f)(2)'s exception. Pursuant to Section 348(f)(2), if the debtor converts a case under Chapter 13 in bad faith, property of the estate is determined to be property of the estate at the time of conversion. 11 U.S.C. § 348(f)(2). By its own terms, this provision only applies to conversions from Chapter 13. No matter how one evaluates the statute, Section 348(a) incorporates no such exception for bad faith conversions. Consequently, should the Court conclude that Section 348(a) effects the same result for conversion from Chapter 11 (and Chapter 12) as Section 348(f)(1)(A) effects for conversion from Chapter 13, then the accompanying result permits non-Chapter 13 debtors to convert their cases in bad faith without fear of reprisal. This interpretation renders the Court powerless to prevent such manipulations. It is unlikely that Congress intended to punish only bad faith Chapter 13 debtors, while permitting other debtors to exploit the Code. A better understanding is that Section 348(f)(1)(A) excepts Chapter 13 debtors–who are typically less affluent and less sophisticated than Chapter 11 debtors [8]–from the cor-

---

**8.** The Court in *Markosian* believed that there

was "no reason to treat chapter 11 debtors

rectly applied meaning of Section 348(a), but with the caveat that such relief shall not be awarded to those who attempt to take advantage of the bankruptcy system.

■■■■■ Additionally, where a statute requires a court to apply the traditional forms of statutory construction, "one of the most basic interpretive canons" instructs courts to "construe[ ] [the statute] so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. U.S.*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (internal quotations omitted); *see also Nunnally v. Equifax Info. Serv., LLC*, 451 F.3d 768, 773 (11th Cir.2006) (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)). This "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, —— U.S. ——, 133 S.Ct. 1166, 1178, 185 L.Ed.2d 242 (2013). Reading Section 348(f)(1)(A) as nothing more than "clarification" of the generally applicable rule in Section 348(a) renders Section 348(f)(1)(A) entirely superfluous and meaningless because Section 348(f)(1) becomes merely duplicative of Section 348(a). If Congress intended to articulate a general rule, it would have been far simpler and more efficient simply to amend Section 348(a), rather than add a subsection facially applicable only to conversions from a single chapter of the Code. However, if the Court refuses to read Section 348(a) as having a general effect similar to Section 348(f)(1), then the statutory construct grants subsection (f) both purpose and meaning. Moreover, Section 1115 provides that earnings of a Chapter 11 debtor

acquired after commencement, "but *before the case is ... converted to a case under chapter 7 ...* [,]" become property of the estate. 11 U.S.C. § 1115(a)(2) (emphasis added). If estate property obtained post-petition under Section 1115(a) failed to transfer to the converted estate, there would be no reason to specify that earnings acquired post-commencement but pre-conversion become property of the estate, for conversion would immediately reclassify the property as non-estate property; causing that clause also to become unnecessary.

The Court finds further support in the consonance between this holding and that made in Part I of this Order. Both issues involve events transpiring during the pendency of the Chapter 11—*i.e.* the effects of confirming a plan and earnings becoming property of the estate by virtue of Section 1115—and both reject the legal fiction that a converted case was always a Chapter 7 case. To quote Judge Spector,

> At the risk of sounding simplistic, one would expect that a case which was converted from chapter 11 to chapter 7 will be analyzed as just that—a case which was converted from chapter 11 to chapter 7. The notion that conversion gives rise to the legal fiction that the case was always a chapter 7 is conceptually awkward, and there is no readily apparent reason why reality must be ignored in this fashion.

*In re Winom Tool & Die, Inc.*, 173 B.R. 613, 619 (Bankr.E.D.Mich.1994).

Finally, although the Eleventh Circuit has not scrutinized the exact question before this Court, *dicta* within one of its Chapter 12 cases suggest that it would reach a similar conclusion.

differently than chapter 13 debtors in this context[,]" glossing over the fact that Chapter 13 and Chapter 11 debtors are generally treated differently by the Code in a number of

respects: higher filing fees, debt limits, quarterly fees and additional administrative duties.

There is one wrinkle in cases, like the present one, which began as Chapter 12 proceedings but were converted to Chapter 7. Section 1207(a) of the Bankruptcy Code, which applies to Chapter 12 cases, expands the definition of property of the estate to include: "all property of the kind specified in such section [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title...."11 U.S.C. § 1207(a)(1). The practical effect of that expansion in the temporal limitation is to move the cutoff date for the acquisition of property from the filing of the bankruptcy case to the time it is converted under Chapter 7.

*In re Bracewell,* 454 F.3d 1234, 1237 n. 1 (11th Cir.2006). For these reasons, the Court respectively disagrees with the conclusions reached by the Courts in *Markosian* and *Evans* and finds that the Debtor's 2011 Bonus Income became property of the Chapter 7 estate upon conversion of this case.[9]

### IV.

The final issues for the Court are to determine the character of the 2011 Bonus Income and whether these funds are subject to the exemptions claimed by the Debtor in his schedules. As a general rule, a debtor may convert nonexempt assets to exempt assets, so long as he accomplishes it prior to commencement of his case and he converts the property without intent to defraud creditors. *See In re Pomerantz,* 215 B.R. 261, 264 (Bankr. S.D.Fla.1997); *In re Gepfrich,* 118 B.R. 135, 138 (Bankr.S.D.Fla.1990). As this Court has previously stated, conversion under the Code "does not effect a change in the ... date of the ... commencement of the case." 11 U.S.C. § 348(a). The Debtor acquired the 2011 Bonus Income as cash or a cash equivalent after commencement of the case. Although the Debtor subsequently invested the 2011 Bonus Income in the State Farm retirement account, such a transaction does not render the asset exemptible under the Georgia exemption statute claimed by the Debtor and applicable to retirement accounts. *See* Official Code of Georgia Annotated (hereinafter "O.C.G.A.") § 44–13–100(a)(2)(F). Instead, for purposes of whether the funds are exemptible, the property should be treated as an asset with the same characteristics it had when it entered the estate: cash or cash equivalent earnings from employment.

Pursuant to Section 522(b)(1) of the Bankruptcy Code and Georgia law, O.C.G.A. § 44–13–100(a) applies to determine the Debtor's entitlement to exemptions in this case. *See* 11 U.S.C. § 522(b)(1); 11 U.S.C. § 522(b)(2) & (3); O.C.G.A. § 44–13–100(b). Georgia's ex-

---

**9.** Neither party raised the issue as to whether or not the Debtor still possesses the 2011 Bonus Income or otherwise has control of the funds, and neither party briefed the Court on the potential legal impact should the funds have been previously disbursed by the Debtor. The 2014 deposition of the Debtor suggests that soon after depositing the 2011 Bonus Income into the State Farm retirement account, the Debtor withdrew 2.5 times that amount, primarily to pay for his child's tuition. *See* Debtor's Dep., Jan. 16, 2014, at 25–26 (Dkt. No. 162, Ex. B). Presumably, it would have been the trustee's prerogative to choose whether or not to bring an avoidance action under Section 549 of the Code. Moreover, the Court is uncertain of all transactions in the account, and neither party briefed the issue regarding applicable accounting principles. For purposes of this Order, the Court shall treat the 2011 Bonus Income as if it was still within the control of the Debtor upon conversion. The Court reserves the matter, should the Chapter 7 trustee seek turnover of property of the estate or take any action otherwise appropriate under the Code.

emption statute contains no exemption applicable to cash or cash equivalent earnings from an employer. However, where a debtor has not utilized the "homestead exemption," the debtor may exempt up to $5,600 in value in any property. *See id.* § 44–13–100(a)(6). A review of the Debtor's Schedule C reveals that the Debtor applied only $4,560 [10] of this "wildcard" exemption to assets of the estate. *See* Debtor's Second Am. Schedule C (Dkt. No. 136). Accordingly, if the Debtor amends his Schedule C, he may be entitled to exempt $1,040 of the 2011 Bonus Income, leaving $8,960 as nonexempt property.

### Conclusion

For the reasons stated above, the Court finds that the Severance Income and the 2010 Bonus Income vested in the Debtor at confirmation of the Plan and did not become property of the Chapter 7 estate upon conversion. Therefore, no exemption was necessary to remove the property from the Court's jurisdiction and distribution to creditors. The 2011 Bonus Income, however, became property of the converted estate and is potentially eligible for only a portioned exemption. Accordingly, it is hereby

**ORDERED** that Rogers' Objection is **SUSTAINED in part** and **OVERRULED in part**. The Debtor's exemption in the 2011 Bonus Income under O.C.G.A. § 44–13–100(a)(2)(F) is **DENIED**. Debtor is instructed to amend his schedules within ten (10) days from the date of this Order

to depict the 2011 Bonus Income as an independent asset, accompanied by an applicable exemption, if warranted. Should the Debtor wish to avoid any party admissions and reserve issues alluded to by the Court in Footnote 9, he may so designate that the 2011 Bonus Income was disbursed prior to the conversion, so that the Chapter 7 trustee may determine the appropriate course of action. The Severance Income and the 2010 Bonus Income shall be considered vested in the Debtor, free and clear of obligations owed to Rogers.

It is **FURTHER ORDERED** that the Chapter 7 trustee shall have forty (40) days from the date of this Order to investigate whether further administration of the bankruptcy case is warranted. It appearing that this is the last issue remaining in this Chapter 7 case,[11] should the Chapter 7 trustee choose not to take any action within the forty days, the Clerk is authorized to conclude the case without further Order of the Court.

The Clerk is **DIRECTED** to serve a copy of this Order on Rogers, the Debtor, the Debtor's attorney, and the Chapter 7 trustee.

**IT IS ORDERED.**

---

10. The Debtor initially applied the wildcard exemption only to $4,410 of property, which was subsequently reduced to $1,110. *See* Debtor's Schedule C (Dkt. No. 10); Debtor's First Am. Schedule C (Dkt. No. 30).

11. The Court recognizes that there is an unresolved motion, objecting to the Debtor's Chapter 11 discharge and final decree (Dkt. No. 111) and an unresolved objection, protesting the Debtor's initial exemptions (Dkt. No. 21). The objection to discharge and final

decree appears moot, since this case was converted to Chapter 7. The objection to initial exemptions was presumably rendered moot, either by the Debtor's first set of amended schedules (Dkt. No. 30) or by confirmation of the Plan. Additionally, Rogers chose not to prosecute its adversary complaint objecting to the Debtor's discharge in the Chapter 7 case. *See BER Law P.C. v. Freeman,* Adv. Proc. 13–1038–WHD.